# Line's Estate.

*Wills—Construction—Acts of testator.*

In construing a will the intention of the testator must be sought from the whole instrument, and having thus been ascertained, must be enforced. Canons of interpretation and precedents are simply the means by which the intention of the testator is to be ascertained when his words are uncertain and equivocal. They cannot, however, be permitted to defeat the intention of a testator which is expressed in clear and unequivocal language. In construing such a will, no aids to interpretation are needed and none should be employed. The will speaks for itself.

*Will—Half blood—"Brother"—"Heirs"—Intestate law.*

The heirs of a decedent are those of his kindred who upon his decease take his real property.

The word "heirs" is often used by a testator in a double sense, meaning the heirs at law in relation to real estate and those persons who would be entitled under the statute of distributions in relation to personal estate.

The fact that a testator in his will calls a "half-brother" a "brother" cannot overcome the fact that he was in reality a half-brother nor disclose an intention on the part of the testator to give him the share in the testator's real estate to which a brother of the full blood would be entitled.

Testator dying possessed of both real and personal property provided by his will as follows: "All the rest, and residue of my estate I direct shall be divided among my heirs under and according to the intestate laws of Pennsylvania." He appointed his half-brother, who was designated as "my brother," as one of his executors. By codicil he directed as follows: "In addition to what I have given to my brother (naming the half-brother) as one of my heirs and distributees under the foregoing will, I give, devise and bequeath unto him" certain stock in a corporation named. Testator left to survive him a half-brother and nephews and nieces, surviving children of a deceased brother and sister of the whole blood. *Held*, (1) that the word "heirs" as used in the will was not used in its technical sense as heirs at law in relation to real estate, but in the broader and more comprehensive sense of those who inherited personal property as well as real estate; (2) that the use of the word "brother" instead of half-brother did not of itself disclose an intention to treat a half-brother as a brother of the whole blood; and (3) that the half-brother was not entitled to share in the real estate, but only in the personal property.

*Wills—Codicil—Purpose of codicil.*

The purpose of a codicil is to make a disposition of the testator's estate other than that made in the will. If any specific change is made, it negatives by implication an intention to make any other in the provisions of the will.

Argued April 27, 1908. Appeal, No. 253, Jan. T., 1907, by Lute A. Line, from decree of O. C. Cumberland Co., dismissing exceptions to auditor's report in Estate of Wm. R. Line, deceased. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Exceptions to report of Wm. Trickett, Esq., auditor.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to the auditor's report.

*E. M. Biddle, Jr.,* for appellant.—The intention of a testator, expressed in his will and fairly drawn from it, must govern the construction of it; it is the pole star in every will, and ought to be firmly adhered to: Graham v. Graham, 3 Clark, 212; Baker's App., 115 Pa. 590; Ashburner's Est., 159 Pa. 545; Wright v. Brotherton, 2 Rawle, 133.

The words used, "my heirs," has a well-understood technical meaning, which, in the absence of a clearly expressed contrary intent, must control: Porter's App., 45 Pa. 201; Eby's App., 50 Pa. 311; Eyre's App., 106 Pa. 184; Dodge's App., 106 Pa. 216.

If real and personal estate be given together to "heirs," those entitled to the real estate take the personal estate also: Clarke v. Cordis, 86 Mass. 466; Loring v. Thorndike, 87 Mass. 257; Rogers v. Brickhouse, 5 Jones Eq. (N. C.) 301.

The misdescription of a legatee in a will does not render the legacy void, if it can be ascertained by the will, or by proof extrinsic to the will, who was intended by the testator: Smith v. Smith, 4 Paige, 271.

*S. B. Sadler,* for appellee.—The terms of a will ought not to be altered by mere conjecture: Cheesman v. Wilt, 1 Yeates, 411; Doebler's App., 64 Pa. 9.

Where personal property is disposed of, or real and personal property, the use of the word " heirs " is equivalent to next of kin, under the intestate laws : Comly's Est., 136 Pa. 153 ; McKee's App., 104 Pa. 571.; Woods's App., 18 Pa. 478.

There is nothing significant in the use of the word " brother." It is used to embrace those of the half as well as those of the whole blood. A brother is a male person who has the same father and mother, with another person, or the same father or mother. The term includes half-brothers or those having one common parentage : Root's Est., 187 Pa. 118 ; Appel v. Byers, 98 Pa. 479.

Opinion by Mr. Justice Mestrezat, May 11, 1908 :

William R. Line, the testator, died May 7, 1905, leaving to survive him Lute A. Line, a half-brother, a niece, the sole surviving child of a deceased brother, and two nephews and a niece, the children of a deceased sister. As shown by the report of the auditor, appointed to distribute the funds in the hands of the executor, the testator was at the time of his death the owner of personal property of about the value of $31,000, and of real estate of the value of about $23,000. The will, dated October 4, 1904, is quite brief. After the payment of his debts and funeral expenses and a bequest of $5,000 to his stepdaughter, the testator devises and bequeaths as follows : " All the rest and residue of my estate I direct shall be divided among my heirs under and according to the intestate laws of Pennsylvania." He then names his executors as follows : " I nominate and appoint my brother Lute A. Line and my friend John Hays Esq. to be my executors." Two weeks after he executed the will he added the following codicil : " In addition to what I have given to my brother Lute A. Line, as one of my heirs and distributees under the foregoing will, I give, devise and bequeath unto him my $5,000 in the capital stock of the Carlisle Manufacturing Company." The executors filed an account, and the auditor appointed to distribute the funds in their hands, after the payment of the legacy to the stepdaughter and the $5,000 legacy to Lute A. Line, awarded the proceeds of the real estate per capita to the testator's nephews and nieces, and the proceeds of the personal property equally among the nephews, nieces and Lute A. Line, the half-brother

of the testator. The court confirmed the distribution, and Lute A. Line has taken this appeal. He contends that, under the provisions of the will, he is entitled to a share of the proceeds of the realty as well as of the proceeds of the personalty.

Under the intestate Act, April 8, 1833, P. L. 315, sec. 4, 2 Purd. (13th ed.) 1998, in default of issue and subject to the estates and interests of the widow, husband, father and mother, the real estate of an intestate who leaves neither brother nor sister of the whole blood, but nephews and nieces, being the children of a deceased brother or sister, descends to and vests in such nephews and nieces per capita. By the same section of the act the personal estate of such intestate is distributable among his brothers and sisters and their issue, as is provided for the descent and division of the real estate of the intestate, but without any distinction of blood. It will, therefore, be observed that under the intestate laws of the commonwealth Lute A. Line was entitled to share equally with the testator's nieces and nephews in the personal fund, but was not entitled to participate in the distribution of the proceeds of the real estate.

The appellant, by his counsel, contends that by the provisions of the testator's will the residuary estate was to be divided among his heirs, which was a class that was to take the whole residuum of the estate, and the reference to the intestate laws was merely to indicate how the division among the class was to be made. The learned counsel for the appellant concedes that the will proper gives Lute A. Line no share whatever in the decedent's estate, either real or personal, if evidence was competent to show that the appellant was a half-brother of the intestate. It is claimed, however, on behalf of the appellant that the codicil shows that he was to share in the proceeds of the realty; that the words "in addition" in the codicil show that Lute A. Line had been given something under the will, which was one-third of the entire residue of the testator's estate. It is further claimed that such intention on the part of the testator is shown by the fact that he speaks of Lute A. Line as "my brother" in appointing him as one of his executors.

We think the conclusion of the learned auditor is correct.

We agree with the counsel for the appellant that the intention of the testator must be sought from the whole instrument, and having thus been ascertained, must be enforced. Canons of interpretation and precedents are simply the means by which the intention of the testator is to be ascertained when his words are uncertain and equivocal. They cannot, however, be permitted to defeat the intention of a testator which is expressed in clear and unequivocal language. In construing such a will, no aids to interpretation are needed and none should be employed. The will speaks for itself.

By his will, William R. Line directed his estate to be divided " among my heirs under and according to the intestate laws of Pennsylvania." As to kindred of the whole and half blood, these laws vest real estate and personal property in different persons. Instead of naming the persons he denominated his "heirs," the testator simply used the shorter expression of directing the division of his estate to be made "under and according to the intestate laws" of the state. He did not use the word "heirs" in its legal or technical sense, but in the broader and more comprehensive sense of those who inherit personal property as well as real estate. The word "heirs" is often used in a double sense, meaning the heirs at law in relation to real estate and those persons who would be entitled under the statute of distributions in relation to personal estate: 15 Am. & Eng. Ency. of Law (2d. ed.), 328. The testator intended that his relatives should share his estate and that the division should be made as though he had died intestate. He could not have used the word "heirs" in its technical sense, otherwise he would not have disposed of the greater part of his estate. The heirs of a decedent are those of his kindred who upon his decease take his real property : Dodge's Appeal, 106 Pa. 216, 220. If, therefore, we limit the word "heirs" to its legal signification, the testator only disposed of his real property, which was much less than one-half of his entire estate. He died possessed of personal property of about the value of $31,000, but of real property, of only about $23,000. It is clear, however, as declared in his will, that he intended to dispose of "all the rest and residue of my estate." We must, therefore, conclude that by the use of the word "heirs" the testator intended that it should apply not only to those

who took the real estate, but to those who should participate in the proceeds of the personal property, in other words, it meant heirs and distributees. As a distributee, the half-brother would share the testator's personalty with the nephews and nieces. The portion that each relative should receive was to to be determined, as declared in the will, "under and according to the intestate laws of Pennsylvania." As noted above, the intestate act of 1833 divides the real estate of the testator among his nephews and nieces, and his personal estate among his nephews and nieces, and his brother of the half blood.

We do not agree with the appellant's counsel that the testator in describing Lute A. Line in the will as a " brother " instead of a " half-brother," disclosed an intention to treat the appellant as a brother of the whole blood, and thereby give him the one-third of the entire estate. In the distribution of the estate by the auditor, it was necessary that the parties entitled to the fund should be identified and their relation to the testator should be made to appear. It, therefore, became necessary to show that Lute A. Line was one of the parties interested in the estate, who he was, and his relationship to the testator. The simple fact that the testator called the appellant a " brother " instead of a " half-brother " in naming him as one of his executors cannot overcome the fact that he was in reality a half-brother, nor disclose an intention on the part of the testator to give him the share to which a brother of the full blood would be entitled. As observed by the vice chancellor in Grieves v. Rawley, 10 Hare, 63, 64, in general when one speaks of his brothers and sisters he does so without reference to the definition of the word by lexicographers, but as a class, standing in the same relationship to one or both of his parents as he himself stands.

Nor do we think that the codicil puts a different interpretation upon the will than the one we have given it. The purpose of a codicil is to make a disposition of the testator's estate other than that made in the will. If any specific change is made, it negatives by implication an intention to make any other in the provisions of the will. The use of the words " in addition " in the codicil clearly shows that the testator thought he had given his brother something in the original will. If, standing alone, the will itself did not show a devise or bequest

to Lute A. Line, the codicil clearly shows that something was given him. It not only discloses that fact, but it defines the words "my heirs" used in the will. The codicil says: "In addition to what I have given to my brother Lute A. Line as one of my heirs and distributees under the foregoing will." "My heirs" as used in the will, therefore, are construed by the testator to mean "my heirs and distributees." Hence it is apparent that "heirs" in the will was used in the sense of "heirs and distributees." Such interpretation of the word "heirs" renders the will effective in disposing of the entire estate. This concurs with the presumption of the law, and gives a harmonious reading to the will and the codicil.

The learned counsel for the appellant very properly concedes that parol evidence was not competent to explain the will or show the intention of the testator. The will is sufficiently definite, and speaks for itself. It may be, as claimed by the appellant's counsel, that the testator intended that his half-brother should receive the share of a brother of the whole blood, but he has not so clearly manifested such intention as to warrant the court in declaring it.

The assignments of error are overruled and the decree of the court below is affirmed.