## Thomas' Estate.

*Wills—Codicils—Construction.*

1. Where a will and codicil are to be construed, they must be regarded as parts of one and the same instrument, and the codicil is not to be allowed to vary or modify the will, unless it be plain that such was the intention of the testator. But where there is a real discrepancy, the codicil, or if more than one, the last must prevail.

2. By her last will testatrix disposed of her personal effects and devised her residuary estate in trust to pay over one-half of the income thereof to her unmarried daughter O, one-fourth to her married daughter L, and the remaining one-fouth to her daughter-in-law E for the benefit of herself and her two children, the trust to continue for the lives of the cestuis que trustent, and twenty-one

years after the death of the survivor, with an ultimate remainder to a charity. In case of the marriage of C, her interest was to be reduced to one-third and the share of E was to be forfeited by her marriage. A codicil was executed three months later, which recited the source of the family fortune, and declared the purpose of testatrix to equalize the shares of her children and grandchildren in the distribution of that fortune. It further set forth that under the terms of the will of her sister W, testatrix received a life estate in two-thirds of W's estate with remainder to her surviving children and that when testatrix made her will she was under a wrong impression as to how distribution would be made of this portion of her sister's estate. She therefore directed that the share of her grandchildren in her estate should be computed by adding to the net amount of her estate a sum equal to the amount of the trust estate under the will of her sister, and that one-third of this total should constitute the trust fund for the children of her deceased son; that this share or part should be deducted from her "own individual estate," and the balance of her "said estate" should be equally divided between the trusts for her daughters C and L. A second codicil was executed more than six years later by the testatrix and was written in her own hand, evidently without the assistance of counsel, by which testatrix appointed a trust company trustee ɛ. ɪd then directed that the interest of her estate should be divided into three parts, one-half to her daughter C, the other half divided between her daughter L and the two sons of her deceased son, leaving his widow as guardian. She also provided that if her daughter C married she should receive a third and in the event of her death the interest was to be returned and divided among the others. *Held,* that the testatrix had abandoned the disposition of her property as set forth in the second codicil, and disposed of her estate in the third codicil without regard to the results of the distribution of her sister's estate.

Argued March 25, 1913. Appeals, Nos. 34, 35 and 36, Jan. T., 1913, by Fidelity Trust Company, Executor and Trustee, Cornelia Colton Thomas and Lucy Phillips, from order of O. C. Philadelphia Co., April T., 1910, No. 374, upon exceptions to adjudication in Estate of Mary Rowena Thomas. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Reversed.

Exceptions to readjudication.

The opinion of the Supreme Court states the case.

*Errors assigned* were in dismissing exceptions to the readjudication.

*John G. Johnson,* with him *Jere J. Crowley* and *William Alexander Brown,* for appellants.—In the interpretation of a codicil, the intention of the testatrix goes: Reck's App., 78 Pa. 432; Lines's Est., 221 Pa. 374.

The will and codicil or codicils are construed together as one instrument when possible, but this gives way before an ascertained adverse intent: Alsop's App., 9 Pa. 374; Lee's Est., 16 Pa. Superior Ct. 627.

A will or codicil or a provision or provisions in either is revoked by a subsequent codicil either by express words or by necessary implication: Earl of Hardwicke v. Douglas, 7 Clark & Finnelly 795; Dempsey v. Lawson, L. R. 2 Prob. Div. 98.

A revocation or alteration of a will or codicil or any provision of either will be implied from an absolute inconsistency between the provisions of either the will and first codicil and the second or any later codicil: Baker v. Story, 23 Weekly Reporter 147.

*John McConaghy, Jr.,* for appellee, cited: Johns-Hopkins Univ. v. Pinckney, 55 Md. 365; Sharps's Est., 6 Kulp 467; Budd's Est., 2 Pa. D. R. 148; Sigel's Est. (No. 1), 213 Pa. 14; Dobbin's Est. (No. 1), 221 Pa. 249; Cassidy's Est., 224 Pa. 199; Line's Est., 221 Pa. 374; Phillips's Est., 1 Pa. D. R. 311.

OPINION BY MR. JUSTICE POTTER, May 28, 1913:

By her last will and testament Mary Rowena Thomas disposed of her personal effects and devised her residuary estate in trust to pay over one-half of the income thereof to her unmarried daughter Cornelia; one-fourth to her married daughter Lucy Phillips, and the remaining one-fourth to her daughter-in-law Eugenia

Thomas, widow of her deceased son, for the benefit of herself and her two children. These trusts were to continue for the lives of the cestuis que trustent, and twenty-one years after the death of the survivor, with remainders to issue, and cross-remainders in the event of the failure of issue, with an ultimate remainder to a charity. In case of the marriage of her daughter Cornelia, her interest was to be reduced to one-third, and the share of the daughter-in-law was to be forfeited by her marriage. A codicil bearing even date with the will was added for further certainty as to the contingent remainder to the charity. A second codicil was executed three months later, which recited the source of the family fortune, and declared the purpose of testatrix to equalize the shares of her children and grandchildren in the distribution of that fortune. It further set forth that under the terms of the will of her sister, Mrs. Wyman, testatrix received a life estate in two-thirds of her sister's estate, with remainder to her surviving children; it was stated that when testatrix made her will she was under the impression that the children of her deceased son would share equally with her surviving children in the estate of Mrs. Wyman, but that she had since learned that this was not the case; that the division of her own estate as directed in her will would result in great inequality and injustice to her grandchildren, the sons of her deceased son, and in case her married daughter should die before the testatrix, the same injustice would result to the daughter's children, as they would be deprived of participation in the estate of Mrs. Wyman. She, therefore, directed that the share of her grandchildren in her estate should be computed by adding to the net amount of her estate a sum equal to the amount of the trust estate under the will of her sister, and that one-third of this total should constitute the trust fund for the children of her deceased son; that this share or part should be deducted from her "own individual estate," and the balance of

the principal of her "said estate" should be equally divided between the trusts for her daughters Cornelia Thomas and Lucy Phillips.  A third codicil was executed more than six years later by testatrix, and was written in her own hand, evidently without the assistance of counsel.  In this codicil she appoints the Fidelity Trust Company trustee, and then directs the interest of her estate to be divided in three parts, one-half to her daughter Cornelia Colton Thomas, the other half divided between her daughter Lucy Phillips, and the two sons of her deceased son, leaving his widow as guardian, with the privilege of using the income for her own use, and at her discretion until the boys are of age.  She then provides that if her daughter Cornelia marries she will receive a third, and in the event of her death the interest will be returned and divided among the others.

The question presented for determination is the proper construction of the third codicil, and the effect to be given to it.  Did the testatrix intend thereby to revoke the second codicil, and substantially re-enact the original will, with certain changes in the specific legacies?  In the adjudication of the auditing judge, which was approved by the majority of the court below, it was held that the testatrix did not intend to revoke the provisions of the second codicil, and make void its reference to the estate of Mrs. Wyman.  The conclusion reached was that in referring to "her estate" the testatrix regarded it as including the estate of Mrs. Wyman, but instead of providing for an equal distribution as directed in the second codicil, she restored the proportions as set forth in the original will; that the express purpose of the second codicil was to incorporate Mrs. Wyman's estate with her own for the purpose of equalization, and not with the intention of changing the proportions of distribution; and that "the changing of the proportions thereby was apparently unwittingly done, and this fact may have been the inspiration

and reason for the last codicil." The auditing judge therefore directed that the amount of Mrs. Wyman's estate was to be added to the balance of testatrix's estate, and decided that "the income from so much of her estate as represents one-fourth of the combined estates is payable to John Dover Thomas, 3d, and Thomas Hay Thomas, two-thirds of the balance to Cornelia Colton Thomas, and the other one-third to Louisa Phillips."

There is no controversy as to the law which is applicable to the case. Counsel for appellant concede that where a will and codicil are to be construed, they must be regarded as parts of one and the same instrument, and the codicil is not to be allowed to vary or modify the will, unless it be plain that such was the intention of the testator. But where there is a real discrepancy, the codicil, or if more than one, the last must prevail. Is there such a discrepancy between the second and third codicils in this case? In both of them the testatrix dealt of course with her own estate. She had no power to deal with anything else. In the second codicil she directed that an amount equal to one-third of the sum of her own estate and that of her sister should be deducted from the amount of her own estate and set apart for the benefit of the family of her deceased son, and the balance remaining of her estate was to be set aside for the benefit in equal amounts of her daughters Cornelia and Lucy. To illustrate by reference to the actual figures, as shown by the schedules, the estate of the testatrix as for distribution amounted to $45,234.10, and that of her sister Mrs. Wyman to $49,625.64, making an aggregate of $94,859.74. One-third of this amount, or $31,619.91, was, under the second codicil, to be set aside for the benefit of the family of her deceased son, and the remainder of her estate, $13,614.19, was to be set aside in equal proportions for the benefit of her daughters. This would give to each of them the interest of $6,807.10. But when the tes-

tatrix wrote the third codicil, she directed that the interest of her estate should be divided into three parts; one-half of the interest, amounting apparently to $22,-617.05, to go to her daughter Cornelia; and one-fourth of the interest amounting to $11,308.52 to her daughter Lucy Phillips, and the remaining one-fourth, being $11,-308.53, to the family of the deceased son.

Dealing as she was in both codicils with her own estate, we do not see that these differing provisions for distribution can be reconciled; and if not, the directions in the latter codicil must prevail. We can find nothing in the language of either codicil to justify the assumption that when the testatrix used the words "my estate" in the third codicil she intended to give to these words anything more than their natural meaning. In the second codicil she distinguishes clearly between her own estate and that of her sister Mrs. Wyman, and in directing the manner in which the computation therein prescribed was to be made, she refers to "the sum of both estates," thus showing that she had each in mind. We think the inference is unavoidable that in using the words "my estate" in the third codicil, she gave to them not only their natural meaning, but the same meaning which she attached to them in the second codicil. The distribution which testatrix directed in that codicil did not produce equality in the division of her own estate. On the contrary, it contemplated marked inequality, but it avowedly did so for the purpose of evening up the results of the distribution of the estate of her sister. But in the third codicil she makes no reference, directly or indirectly, to her sister's estate. No reason for this apparent change of mind was given, but none was required. She was at liberty to do as she pleased. We are unable to resist the conclusion that she abandoned the disposition of her property as set forth in the second codicil, and disposed of her estate in the third codicil without regard to the results of the distribution of her sister's estate. With the consistency or inconsistency of

her action, or with its reasonablenss, we have nothing to do.

The assignments of error are sustained, and the decree of the Orphans' Court is reversed, and the record is remitted that distribution may be made in accordance with this opinion.