Warne's Estate.

*Bevan A. Pennypacker* and *Wm. Clarke Mason*, for Fidelity-Philadelphia Trust Company, exceptant.

*Carlyle H. Ross*, for Joseph Roy Vetterlein, exceptant.

*Randolph Sailer*, for administrators *c. t. a.* of estate of Theodore V. Warne, deceased, exceptants.

*G. Herbert Jenkins*, contra.

HENDERSON, J., July 11, 1930.—If the intent of a testator may be sought from the four corners of a will, we could want for no better illustration of the wisdom of the rule than in the instant case.

There is but one dispository clause in this will—the trust set up for the widow and two sons. Upon the death of the widow, the income is given equally to the two sons, "so, however, that the same shall not be liable for their debts, contracts or engagements, nor to anticipation, attachment, assignment or alienation" Upon the death of the sons, the estate vested in their issue *per stirpes;* should either die without issue, it was given to the *surviving* son or his issue; and if both died without issue, then, upon the death of the *survivor*, he provided: "I direct that my estate shall go to such persons as would then be entitled under the laws of this State, if I had died intestate."

This clause directs that those who are to take are to be ascertained upon the death of the last son: Wood *v.* Schoen, 216 Pa. 425.

The testator has carefully directed that the life estates to his sons shall be free from their debts, anticipation or assignment; and he further guards the remainder from their creditors by giving it to his heirs ascertained as of the date of the death of the surviving son. He has anticipated the Act of June 29, 1923, P. L. 914, by making the rule there laid down the rule of his will, to wit, the estate in remainder shall vest in his heirs ascertained as of the day of the death of the last life tenant—and thus he again prevents any distribution to the creditors of his sons.

By the two codicils he gives the sons powers of appointment under certain circumstances not now necessary to recite, and upon the failure of his provisions he directed the distribution of his estate "under the intestate law," and, as worded in the second codicil, to his "next of kin and heirs at law." And in both codicils he expressly added that in all other respects he confirmed his will.

It is argued that the phrases of these codicils would ascertain the heirs as of the date of his death and not as of the death of the surviving life tenant, as directed in the will. It is inconceivable that after the carefully drawn provisions of his will to prevent the creditors of his sons—either in their lifetime or upon their deaths—from getting any part of the estate that, without a word expressly modifying this direction, he intended to make so radical a change—to expose the estate to the creditors of the sons—and this in the face of his express direction ratifying the provisions of his will—"in all other respects."

It would be hard to find a better illustration of the old saying—the letter killeth but the spirit maketh alive.

The application of the analytical method in the way attempted merely leads to an illusory certainty—to use an expression of Roscoe Pound.

The exceptions are dismissed and the adjudication is confirmed absolutely.

LAMORELLE, P. J., dissenting.—I am of opinion that those who take are to be determined as of the date of the death of William B. Warne, Sr., which was May 25, 1894. They are his wife and his two sons; they take in the proportions fixed by the intestate law then in force. The fact that the trusts for the two sons were of spendthrift character has no bearing whatsoever: see McFillin's Estate, 235 Pa. 175, and our own recent case of Whiteside's Estate, 13 D. & C. 220.

In Tatham's Estate, 250 Pa. 269, in a clear expression of opinion by our Supreme Court, Mr. Justice. Potter, for the court, said: "That the class described as testator's 'heirs,' to whom a remainder or executory interest is given by a will, are to be ascertained at the death of the testator is admittedly the general rule. This is so well recognized that nothing but the expression of a clear intention to the contrary in the will can be allowed to alter the rule.

In one of our latest cases in which the subject was considered, Bache's Estate, 246 Pa. 276, Mr. Justice Mestrezat said (page 279) : 'It is settled by a long line of decisions in this State that a devise of real estate to one for life, with remainder to the testator's heirs, vests the remainder in those who answer such description at the time of his death, unless the will affords clear and unequivocal evidence to the contrary; and it is immaterial that the life tenant is one of the class who will take the remainder: Stewart's Estate, 147 Pa. 383; Buzby's Appeal, 61 Pa. 111." See what seems to be the latest authority, Kidd's Estate, 293 Pa. 56.

Such was the law when testator made his will—March, 1894—and the codicils thereto in April and May, and also at the time of his decease.

The learned Auditing Judge followed the ruling in Wood v. Schoen, 216 Pa. 425, in reaching his conclusion that those entitled were to be ascertained as of the time of the death of the survivor of the two sons, Theodore V. Warne, Nov. 24, 1929. His decision is based on this wording of the will: "Should both of my sons die without issue, then upon the death of the survivor I direct that my estate shall go to such persons as would then be entitled under the laws of this State, if I had died intestate."

To my mind, testator's continued and continuous use of the word "then," both in his will and codicils, would seem to show that the meaning he attached to the word was "in this or that event," or "because of such fact." But assuming, for the sake of argument, that there were no codicils and nothing calling for interpretation but the language of the will itself, Wood v. Schoen (supra) might have been an authority in point; but as there are codicils, what are we to do with them. They cannot well be ignored. The first of them was made ten days after the execution of the will, and it provided for *two very important changes*. It conferred upon the survivor of the two sons a general power of appointment by will, if both died without descendants, and in default of such will directed that "my said estate shall be distributed as my property under the intestate law," followed by the significant clause, "I ratify and confirm in all other respects my said will." It will not do to say that the codicil was made only for the purpose of conferring this power of appointment. It did more. It omitted or ignored the "then" entirely, so far as distribution is concerned, and in impressive and exact wording provides for another and a different scheme of ultimate distribution; it went further; in *all* other respects—not in but *one* respect—it confirmed the will as written.

In brief, it cut out entirely the original scheme and substituted another and different method.

Some forty days later and a very few days before his death, testator made his second and last codicil. In this he conferred a power of appointment on each son of that son's one-half interest in the estate, and if neither sons leave wills nor children or descendants them surviving, provides that "then my estate is to be distributed to my next of kin and heirs at law." This use of the word "then" does not harmonize with the second "then" in the will; it can have but one meaning "in such case" or "such event."

In construing a will, the object of the courts is to ascertain, not the *intention* simply, but the *expressed intention* of the testator, *i. e.*, the intention which the will itself, either expressly or by implication, declares: or (which is the same thing) the meaning of the words—the meaning, that is, which the words of the will, properly interpreted, convey.

Reading the will and two codicils as a complete whole, there can be no question that the date of testator's death marks the time for the ascertainment of the heirs and next of kin who take, and the fact that those who take

intermediate life estates are those same next of kin and heirs at law matters not. It is only by saying that testator meant nothing, and intended no force to be given, to the changed phraseology (which makes such a mighty difference in the destination of the fund), that we can go back to the will for the purpose of ascertaining the heirs under the circumstances which really happened. Surely in this particular there is a discrepancy between the will and codicil, and the codicil must prevail, whether or not we believe the testator would have so intended had it been brought to his intention. We are not to guess at his intention, but construe the very words he has used: Thomas' Estate, 241 Pa. 290.

It is very easy, in the light of the events which have happened, to surmise that if the testator could have foreseen what has occurred, the desire on his part would have been to direct a certain method of distribution. We are not permitted to arrive at the testator's intention by subsequent occurrences, but are limited to construing the words he used. We must construe his will as though none of the events its provisions were intended to cover had yet occurred. Being restricted, not to what he may have intended, but to the intention as disclosed by the words used, must we not give to the codicil that meaning which the words would have if the two instruments are read together, as suggested above?

As stated in Line's Estate, 221 Pa. 374, the very purpose of a codicil is to make a different disposition from that made in the will, and where there is a deliberate purpose to change the will, the codicil is to be followed. The testator in both codicils keeps to a phraseology making his own death the time of ascertainment and does not repeat the phraseology of the will. Why did he not repeat these words? We do not know, but with this we are not concerned. As said by Mr. Justice Potter in Thomas' Estate, *supra*, speaking of a change made by codicil: "With the consistency or inconsistency of her [the testatrix's] action, or with its reasonableness, we have nothing to do."

In the case of Wood *v.* Schoen, 216 Pa. 425, relied upon by the learned Auditing Judge, we have a case simply of a will where testator gave a life estate to his wife and three daughters, with remainders to issue he might leave, and in default of such issue, then to those who would then be entitled thereto under the intestate laws of this State.

In the case of Houser *v.* Houser, 268 Pa. 401, Mr. Chief Justice Brown said: "The purpose of a codicil is to change the disposition or administration of a testator's estate as directed in the will: Line's Estate, 221 Pa. 374; and when the disposition of the whole or part of an estate is intended by the codicil to be different from that provided for in the will, the later expression of the testator's intention must prevail."

Testator's later expression of intention was that the disposition of his estate should be of a time different from that disclosed by the will, and for this reason I would sustain all exceptions consistent with this dissent; direct a restated account, prepared in accordance with our rules and practice and have the same reaudited and the balances awarded to the estate of the wife and two sons, or in the discretion of the Auditing Judge, if feasible, directly to the persons entitled under their respective wills.

VAN DUSEN, J., dissenting.—The power of appointment created by the first codicil would be applicable to the circumstances which have occurred, except that it is to be exercised only after the death of testator's widow. The power of appointment created by the second codicil is fully applicable. Even if both were applicable, the last should prevail. The purpose of a codicil is to make a change. The second codicil is complete and understandable, and the spirit

of the testator's last wishes is found therein. I think the error of the Auditing Judge is in saying that the purpose of the second codicil is merely to interject into the will and first codicil a power of appointment by each son over one-half of the estate held in trust for him. On the contrary, it goes over the whole ground; and it is not to be supposed that the word "survivor" in the first codicil was used more deliberately than the word "other" in the second.

And, if that point be passed, it is possible that the "thens" which are so plentiful in the will were inserted with as little thought as given to their omission in the second codicil.