## Wood's Estate

*W. H. Lathrop, Robert T. McCracken* and *Daniel C. Donoghue*, for children and grandchildren of testator, exceptants.

*C. B. Wagoner* and *C. S. Wesley*, for Rutgers College, exceptant.

*George E. Beechwood*, of *Conlen, La Brum & Beechwood*, contra.

GEST, J., November 28, 1934.—By his adjudication and supplemental adjudication, the aduditing judge awarded the balance of principal to Erma R. Wood, the widow of the testator, In trust to hold and manage the same, collect and pay the income therefrom to herself for life, and at her death

transfer and deliver the corpus of the trust to the children of Edward R. Wood, deceased, taking per stirpes.

There are two sets of exceptions. The testator left two children by his first wife, Juliana Wood and Mariane Wood Diaz, and two grandchildren, Theodore Voorhees Wood and Richard Davis Wood, 2d, children of a deceased son. These children and grandchildren except to the adjudication on the ground that the residue of the estate should be awarded to them per stirpes, i. e., one third to Juliana Wood, one third to Mariane Wood Diaz, and one sixth to each of Theodore Voorhees Wood and Richard Davis Wood, 2d. The State University of New Jersey, or Rutgers College, excepts on the ground that the residuary estate should be awarded, after the death of the widow, one half to the above named children of the testator and one half to the State University of New Jersey.

The testator has greatly complicated his testamentary intention by the execution of several codicils, so that we are required to analyse with some care the will and the codicils together.

Edward Randolph Wood died on February 14, 1932, being then in his ninety-second year. He was survived by his second wife, Erma R. Wood, and his issue by his deceased first wife, whose names are above stated. His will was executed on February 7, 1923, and he therein, after a few unimportant bequests, devised the entire residue of his estate to his wife, Erma, and William J. Conlen (whose appointment was subsequently revoked), in trust to pay the income to his wife, Erma, for her life, with remainder on her death to any issue his said wife might have by him, and, in default of such issue, to the University of Pennsylvania upon certain terms of trust unimportant in this controversy, briefly, to hold a certain piece of real estate in New Jersey, called Red Oaks, to be used for the benefit of the officers, professors, instructors, fellow students, et al. of the university, as stated in detail. Then follows an important paragraph:

"Apart from the obligation on the part of the said Trustees of The University of Pennsylvania to hold and continue to hold the said 'Red Oaks' property, the said Trustees shall receive and hold all of the residue of my estate, with full power to sell any and all of the real or personal property at their sole discretion and without liability on the part of the purchaser for the application of the purchase money. The said Trustees shall have power to invest and reinvest the residuary estate, apart from 'Red Oaks' as aforesaid, in real and personal property in their discretion, without being restricted to so called legal investments. The said Trustees shall apply the income thereof at their discretion, from time to time, to the maintenance and improvement of the house and ground at 'Red Oaks,' and to carrying into effect any of the purposes for which the same is held."

As we understand the above provisions of the will, the testator left his residuary estate in trust for his wife for life with remainder to his issue by her, if any, and in default of such issue to the University of Pennsylvania in trust for the maintenance of Red Oaks and its improvement and to carry into effect the purposes for which it was to be held.

By his first codicil, dated May 6, 1926, the testator altered the power of investment given to the trustees of his will. This codicil is unimportant in the present controversy. By another codicil, undated and holographic, stated by the subscribing witnesses to have been executed in November 1927, the testator relieved William J. Conlen from his duty as executor and trustee

under the will, and further gave power to his said wife "as sole executor to disregard and set aside as if nonexistent the trust in my said Will created for the care or disposal or care of the said Red Oaks property, and to sell the same or dispose of it in any way or form she may see fit to do without accountability to the Trustees of the University of Pennsylvania or to any other person or persons."

The third codicil, in typewriting, dated May 17, 1929, is as follows:

"In the event of Mrs. Wood's selling Red Oaks property and thus breaking the trust of the will my purpose is that she shall have the proceeds of the sale of Red Oaks, and the proceeds of sale of the town house 2206 St. James Street, 100 shares of Philadelphia National Bank free of all costs and contingent expenses and the five houses on Pine Street above 25th Street 19 and 21 Pine Street, 18, 20 and 22 Panama Street, the residue to my children and their issue, taking by stirpes, and the cestui que trustship is hereby changed from the University of Pennsylvania to the State University of New Jersey. The beneficiary of the trust created by my will is diverted from the University of Pennsylvania to the State University of New Jersey."

A fourth codicil was executed 6 days afterward, on May 23, 1929, changing the bequest of 100 shares of Philadelphia National Bank to 500 shares, which change was due to an alteration in the capitalization of the bank. In other respects, this codicil is a verbatim copy in typewriting of the third codicil.

After the death of the testator, on October 19, 1933, the widow executrix sold Red Oaks and thus became entitled to the proceeds thereof, and the stock of Philadelphia National Bank, and the real estate or proceeds thereof, as stated in the third and fourth codicils. The exceptions now raise the serious question of the effect thereby caused upon the residue of the testator's estate. Was the trust entirely terminated and the residue given to the children of the testator, or did the trust continue for the life of the widow with remainder to the children (as the auditing judge held) or with remainder one half to the children and one half to Rutgers College?

We are clearly of opinion that the exceptions of Rutgers College should be dismissed, as we discover no basis for them, notwithstanding the earnest argument of its learned counsel. The gift to the college was dependent entirely upon the retention of Red Oaks, and, this being sold, the college was eliminated. The only question is whether the children of the testator are now entitled to the "residue" of the estate or only after the termination of the widow's life interest therein.

Now, when the testator provided that his widow, who was the executrix, might sell Red Oaks, and thus break "the trust of the will", and in that event receive the proceeds of the sale, the bank stock, and certain real estate, he added "the residue to my children and their issue, taking per stirpes", and it appears to us that by "residue" he could only have meant one thing, viz., the residue of his estate. The testator, 6 years after making his will, evidently changed his mind concerning the disposition of his entire estate. In his will, he had disregarded his children by his first wife (he had none by his second wife) and provided for a life estate to his widow, with remainder to his children by her, and, as he had no such issue by her, his testamentary wishes reverted to his children by his first wife, and he made them remaindermen. Then he also changed his mind about Red Oaks, a substantial part of his estate, and in effect gave it, with other assets, to his widow, if she chose to exercise her right to sell

Red Oaks, and naturally enough, as it seems to us, desired, in that event, that his children should take immediately what was left. The subsequent language of the third and fourth codicils is indeed somewhat obscure and clumsily phrased, but, in our opinion, the testator intended to provide merely for a change of his trustee and of his cestui que trust or, as he expressed it, cestui que trustship, respecting Red Oaks, in case the widow did not exercise her rights and the trust should continue. It was indeed argued that the testator in his will provided for two trusts, the first for his widow for life with remainder to his children as stated, and the other for Red Oaks, and that when the widow sold Red Oaks her action operated only pro tanto so far as it was concerned, leaving the first named trust intact. But it is easy to see from the provisions of the will that this construction is erroneous. The testator devised his entire residuary estate in trust for his widow for life and after her death in trust to maintain Red Oaks for the purposes mentioned, and to apply the income of the residuary estate, apart from Red Oaks, to the "maintenance and improvement of the house and grounds at Red Oaks and to carrying into effect any of the purposes for which the same is held." It is thus apparent that if Red Oaks is sold and the trust therefor be disregarded and set aside as if nonexistent, as provided in the first codicil, the whole testamentary scheme which is centered in Red Oaks must entirely fall. There is nothing upon which the trust of the residuary estate can operate. It is undoubtedly true, as argued by counsel, that a codicil does not operate as a revocation of the provision of the will, unless by plain direction, or by force of the clear import of the language of the codicil in some inconsistent or repugnant provision. When, however, such inconsistency exists, the directions of the codicil must be carried into effect, and this in our opinion is apparent in the present case. Illustrations of this principle may be found, among many other cases, in Thomas' Estate, 22 Dist. R. 105, reversed in 241 Pa. 290, Davis' Estate, 6 Dist. R. 45, and Richards' Estate, 4 Dist. R. 264.

The exceptions of the children and grandchildren of the testator are sustained, and all other exceptions are dismissed, and the account is recommitted to the auditing judge for distribution in accordance with this opinion.

NILES, P. J., dissenting.—I do not concur in the opinion of the majority sustaining exceptions filed to the original adjudication.

The consideration relevant to the present disposition are:

The will of Mr. Wood gave the residue of his estate to Mrs. Wood, in trust to pay the net income to herself as long as she might live.

Upon the death of Mrs. Wood without issue, the principal was to be held in trust to establish on "Red Oaks" an institution for the benefit of a university.

The first codicil, making Mrs. Wood sole executor and trustee, empowered her "to disregard and set aside as if non-existent the trust in my said Will created for the care or disposal or care of the said Red Oaks property, and to sell the same or dispose of it in any way or form she may see fit to do without accountability to the Trustees of the University of Pennsylvania or to any other person or persons."

The third codicil, dated May 17, 1929, contains the provision which raises the present doubt: "In the event of Mrs. Wood's selling Red Oaks property and thus breaking the trust of the will my purpose is that she shall have the proceeds of the sale of Red Oaks (and some other real estate and shares of stock) the residue to my children and their issue, taking by stirpes".

On October 19, 1933, Mrs. Wood did sell Red Oaks, pursuant to the power vested in her by the first codicil.

It is conceded that, upon her sale of "Red Oaks", Mrs. Wood became absolutely entitled to the proceeds and the specified real estate and stock.

The uncertain question is as to the effect of the words in the third codicil, "the residue to my children and their issue".

What residue? And when to be ascertained?

The construction approved by the majority is that the intention of the testator was that if Mrs. Wood, by the sale of "Red Oaks", set aside the trust for the benefit of the university, thereby becoming entitled to the proceeds and the other things, she thereby also set aside the trust first expressed of the net income of the residue to her for life.

It does not seem to me that such a construction is correct or in accordance with the principles of the cases referred to in the majority opinion.

The manifest first purpose of the testator was to give nothing to his children, and to his wife the income from the whole estate during her life. Nothing in the codicils diminishes the first devise.

If Mrs. Wood broke the trust regarding "Red Oaks", she was to be entitled to its proceeds and the other specified property absolutely, and would thereby be gainer. Also, testator's children who otherwise would get nothing would be entitled to all the residue after the widow's death.

It does not seem reasonable to conclude that by selling "Red Oaks" she broke the dominant first expressed provision of the net income of the whole estate during her life, and from now on will be entitled to nothing except what she receives absolutely under the third codicil.

I would dismiss all the exceptions.