## Ball's Estate.

*Wills—Codicils—Construction of codicil—Trusts and trustees.*

1. A codicil is intended to change the provisions of the prior will, but the will continues except so far as it is changed by express language or necessary implication, and in other respects the codicil is to be read and construed as part of the will.

2. Where testator who had a life interest in his mother's estate, by his will gives all of his estate to his wife, with remainder to his four children, and thereafter one of the children assigns to him a one-fourth interest in remainder in testator's mother's estate, after which testator makes a codicil reciting the assignment, and giving the interest assigned, to the assignor and his wife for life, and thereafter executes a second codicil, in which he directs "in regard to" his son, the assignor, that "my estate which is not part of the trust estate provided for in the first codicil" shall be held in trust for him, with a proviso that if the son attempts to interfere with the "proper execution" of the will, his "share" shall be divided between his brothers, the second codicil referred to such son's share only, and not to the general estate of testator.

Argued January 5, 1923. Appeal, No. 60, Jan. T., 1923, by Commonwealth Title Ins. & Trust Co., Trustee for Arthur W. Ball, from decree of O. C., Phila. Co., Jan. T., 1922, No. 494, awarding partition in estate of Joseph Ball, deceased. Before FRAZER, WALLING, SIMPSON, KEPHART and SCHAFFER, JJ. Affirmed.

Petition for partition of real estate.

GEST, J., filed the following opinion:

Joseph Ball, the testator, died in 1919 seised of certain real estate, and, by his will, dated in 1906, he devised the same, after the death of his wife, which event has occurred, to his four children, Joseph Price Ball, Henry Price Ball, Arthur W. Ball and Rebecca W. Ball, in equal shares, all of whom survived the testator and his widow. The mother of the testator by her will had devised her estate to him for life, with remainder to his

said four children, and the testator in his will, after reciting that two of his children, Joseph and Arthur, were indebted to him, directed that they should pay their indebtedness out of their grandmother's estate as soon as received, in order that his wife might have as large an estate as possible for her support and comfort.

A codicil, dated in 1910, after reciting that the testator's son Arthur had transferred to him the interest of the said Arthur in the grandmother's estate, provided that the income thereof should be used by his wife for her life and on her death that the estate so conveyed to him should be held by his son Arthur and his wife for their lives and the life of the survivor and on the death of the survivor should vest in Arthur's children. In other respects he ratified and confirmed his will.

The testator then, in 1911, executed a second codicil, which gives rise to the controversy in this case. In this codicil, after ratifying and confirming his will and former codicil, except so far as they conflict with the second codicil, the testator directed as follows:

"I order and direct, in regard to my son Arthur W. Ball, that, immediately after the death of my wife, Sarah P. Ball, my estate, which is not part of the trust estate provided for in the first codicil, shall be held in trust for the benefit of my said son, Arthur W. Ball, the net income of the same to be paid to him for life by the Commonwealth Title Insurance and Trust Company, and, after his death, the principal thereof to vest absolutely in his children, share and share alike; if any children be deceased before their father, then their child or children, if any, shall take said deceased parent's share. If any interference or attempt to prevent the proper execution of this will or its codicils is made by said Arthur W. Ball, then the above share shall be divided between the brothers and sister of said Arthur W. Ball."

The widow having died in 1921, Joseph Price Ball, Henry Price Ball and Rebecca W. Ball filed this petition for an inquest in partition, and the trustee for Arthur

W. Ball, in its answer, asserts that the second codicil revoked the devise contained in the will to the petitioners, and that its effect was to vest the title to the whole of the estate in the respondent. The case hinges on the meaning of the words, in the second codicil, "my estate which is not part of the trust estate provided for in the first codicil shall be held in trust for the benefit of my son Arthur." The respondent claims that this refers to the entire estate of the testator, except that part of the testator's mother's estate which Arthur had conveyed to him, while the petitioners claim that these words refer merely to Arthur's share of the testator's estate.

We are clearly of opinion that the second codicil, by its express terms, was intended to affect only the share of the testator's estate which in his will he devised to his son Arthur, in fee. His language appears to be explicit. He says, "I order and direct in regard to my son Arthur," and proceeds to establish a trust for him, having in the first paragraph of the codicil expressly ratified and confirmed the will in other respects. The obvious intention of the testator with regard to his son Arthur, was, at first, in his will, to give him his one-fourth share of the estate in fee. His first codicil dealt with Arthur's share of his grandmother's estate, conveyed to the testator by Arthur, and this after the death of the testator's wife he gave to Arthur and his wife for life, with remainder to their children. Then, in the second codicil, desiring to make a further change with regard to Arthur, and him alone, the testator established a trust for him.

To give to the language of the second codicil the effect of disinheriting the other three children would stretch it far beyond any reasonable construction. A codicil is intended to change the provisions of the prior will; that is its function; but the will continues, except so far as it is changed by express language or necessary implication, and in other respects the codicil is to be read and construed as part of the will. Cassidy's Est., 224 Pa. 199; Sigel's Est., 213 Pa. 14, and Schattenberg's Est., 269 Pa.

Opinion of Court below—Assignment of Error. [276 Pa.

90, are in point. If the testator had intended to give his entire estate to Arthur or in trust for him, there would be no apparent reason for the testator's apprehension that Arthur would interfere or "attempt to prevent the proper execution of this will or its codicils." There would be no motive for him to do so, and it will be noted that the testator says, "the proper execution of this will," which reference would be meaningless if, as it is contended, the provisions of the will as to the three other children were abrogated in favor of Arthur. And in this connection it will be noted that the testator provides in case of Arthur's interference that "the above share shall be divided between the brothers and sister of said Arthur." This use of the word "share" in the singular number shows very clearly that Arthur's interest was only of an aliquot part of the estate, not the whole of it. And finally, if the testator, in his second codicil, had intended to devise the entire estate in trust for Arthur, there would be no reason for his recital of the fact that the indebtedness of Arthur had been satisfied as of the date of the codicil.

A consideration of the will and codicils convinces us that the testator desired to benefit his four children equally, but, for reasons satisfactory to himself, he intended to put Arthur's share in trust for his life so as to preserve the principal for Arthur's children.

An inquest is accordingly awarded in accordance with the prayer of the petition.

Commonwealth Title Ins. & Trust Co., trustee of Arthur W. Ball, appealed.

*Error assigned,* inter alia, was decree, quoting it.

*Theodore F. Jenkins,* for appellant.

*Joseph R. Embery,* for appellees.

PER CURIAM, January 29, 1923:

This case is affirmed at appellant's costs, on the clear and satisfactory opinion of the learned judge of the court below, awarding an inquest to make partition or valuation of decedent's real estate.

---

## Artzerounian et al. *v.* Demetriades, Appellant.

*Vendor and vendee—Contract—Hand money—Liquidated damages—Forfeiture—Affidavit of defense.*

1. A forfeiture is abhorred in law as in equity, and, where the rights of one of the parties will be injured by declaring a forfeiture, the courts will not be slow to seize on a reasonable opportunity to prevent it.

2. Where articles for the sale of real estate provide for the payment of three sums of one thousand dollars each at three stated periods, and the balance on final settlement, and it is stipulated that the first one thousand dollars shall be forfeited as liquidated damages in case of default, but there is no such stipulation as to the second and third payments, the court will not enforce a forfeiture of the latter payments.

3. In an action to recover hand money paid by plaintiffs on a contract for the purchase of real estate, where plaintiffs aver that defendant was unable to perform his part of the agreement prior to its expiration, because he had no legal title to the property, and such averment is met by a bald denial in the affidavit of defense, such denial is insufficient.

4. A further averment in the affidavit that plaintiffs were not able and willing to perform, does not meet the plaintiffs' statement.

5. If the legal title was not vested in defendant so that he could transfer it to plaintiffs, the latter were not in default, and defendant could not lawfully forfeit the money they had paid.

Argued January 5, 1923. Appeal, No. 68, Jan. T., 1923, by defendant, from order of C. P. No. 3, Phila. Co., Sept. T., 1920, No. 8663, making absolute rule for judgment for want of a sufficient affidavit of defense, in case of Vahaqun S. Artzerounian and Osgan Artzerounian v.