## Vernier's Estate.

*Wills—Codicil—Inconsistent provisions—Devise of real estate by codicil—Residuary clause of will—Vested and contingent estates.*

1. Where the provisions of a codicil are inconsistent with those in the will, the changes made in the codicil are effective.

2. Where a will provides that the interest of a son in the residuary estate, which included real estate, should be contingent upon his surviving the testator's widow, but the testator after the execution of the will acquires other real estate, and thereafter in a codicil specifically devises a house to the son, the codicil operates to vest the house absolutely in the son on testator's death, where there is nothing in the codicil to indicate an intention on the part of the testator that the after acquired real estate was to be considered a part of his residuary estate.

3. The law favors vested rather than contingent estates, and, in case of doubt, a construction that the estate is of the former class is to be made.

4. The heirs at law are not to be deprived of their inheritance unless express directions affecting the result appears, or are necessarily to be implied, yet the rule gives way to a clearly expressed intention to the contrary.

Argued December 2, 1924. Appeal, No. 115, Jan. T., 1925, by Nellie M. Vernier, widow, from decree of O. C. Phila. Co., April T., 1923, No. 1388, dismissing petition to set aside real estate as part of widow's allowance of $5,000 in estate of Eugene R. Vernier, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Reversed.

Petition to set aside real estate as part of widow's allowance of $5,000 under Intestate Act of June 7, 1917, P. L. 429.

The opinion of the Supreme Court states the facts.

Petition dismissed in opinion of GEST, J.   See 4 **Pa. D. & C. R.** 191.   Nellie M. Vernier, widow, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*R. M. Remick*, of *Saul, Ewing, Remick & Saul*, with him *Earl W. Thompson*, for appellant.—The will and codicil can be construed together harmoniously as a perfect whole and effect given to every clause therein without ignoring any expressed wish of the decedent.

*John Weaver*, for appellees.—Construction of a doubtful will must favor heirs at law rather than a stranger to the blood: Schultz v. Schultz, 167 N. W. (Iowa) 674; Nebinger's Est., 185 Pa. 399; Bender v. Dietrick, 7 W. & S. 284; Potter's Est., 257 Pa. 468.

OPINION BY MR. JUSTICE SADLER, January 5, 1925:

William F. Vernier died November 23, 1906, leaving to survive him a widow, four sons and one daughter.   Of these, Eugene died intestate, and without issue, on September 9, 1918, and the testator's wife, Cornelia, in May of 1922.   Nellie M. Vernier, the widow of Eugene, presented a petition to the orphans' court, setting forth that her husband had become the owner in his lifetime of a certain property, under the terms of his father's will, and asking that this be set aside to her as a part of her $5,000 allowance, under the provisions of the Intestate Act of 1917.   Appraisers were appointed, and the real estate in question was valued at $2,500.   Exceptions were filed by the heirs at law of William F. Vernier, it being claimed that no estate had vested in Eugene, and therefore the property could not be set apart, as demanded.   This contention was sustained by the court below, and the present appeal followed.

The will, whose terms must be construed, was dated September 29, 1894, and directed, amongst other things,

that all of decedent's property, with the exception of one house, should be held by his widow during her natural life, or until she should remarry. On the happening of either contingency, it was provided, by the residuary clause, that all of the estate so given for her use should pass to the five children, share and share alike, two of the sons being given the right to purchase named properties at prices fixed, and the balance to be sold and divided. Further it was stated that "if any of the above-mentioned heirs shall have deceased previous to my said wife leaving a wife then the rents, interest and income arising from said deceased share to go to his wife so long as she remains a widow and after her death or remarriage, whichever event shall first happen, then to go to his children if any survive him, otherwise to be divided between my surviving children"; one property was excluded expressly from the residuary estate, as noted above, and it was devised to the daughter Emma, for her life, and upon her death to her surviving children, if any, otherwise to her brothers. If these dispositions constituted all that were made by the testator no difficulty would be found in determining that the interest of Eugene was contingent upon his surviving the mother, and, having died prior to her decease, the present claim by his widow could not be sustained.

The testator, however, added a codicil on September 26, 1903. He had acquired other real estate after the making of his will, and this he devised, giving to each of his sons a house, having already so provided for the only daughter. The essential part of the new writing is as follows: "Now I do by this writing which I hereby declare to be a Codicil to my said will to be taken as a part thereof (will and Derect) I give and bequeath to my son Thomas, House #3140 Nth. Eight Street to my son George House #3142 Nth. Eight Street to my son Eugene House #3144 Nth. Eight Street and House #3150 to my son William H. Vernier. These properties are to be clear of all incumbrances. The Homsted at

Hammonton is to be sold and money to be taken to pay of Mortgages on those four houses #3140-42-44-50 Nth. Eight Street if the amount is not enough sell #1842 Wylie Street that purpose if then is eney left pay of mortgage on othe—property after my wife and my death Houses [naming eight houses]." He further directed that from the income of the property last referred to, there should be paid fifty dollars a month to the daughter during her life, and in the event of her marriage she was given a "regular shaire" of the estate. The balance of the income, if any, was payable to the living brothers, and, upon the death of Emma, the entire return received was given to them, or to his grandchildren, if the brothers were at that time all deceased. A further direction was made for the payment of $25 a year to Eugene for his services in keeping the last named eight houses in repair.

The sole question requiring determination here is the character of the interest acquired by Eugene in the house given him by the codicil. Was his interest vested, or did it depend on the contingency of his outliving his mother? If the will alone were to be considered, no dispute could arise, as the words used in disposing of the residuary estate,—and all but one property then possessed was included therein,—clearly indicate this interest of the five children was made dependent upon surviving testator's widow, at whose death all of the property was to be sold and divided share and share alike amongst those then living, with an added provision for the wife of any son who might at that time be deceased. A different situation is encountered when the terms of the codicil are examined. It will be remembered that, in the will itself, one property was excepted from the estate given to the wife for life, and it was devised to Emma, one of the children, but no similar provision was made for the others. When, however, the testator became the owner of additional assets, and prepared the codicil, he also gave a house to each of his sons, and an annuity to

Emma, for whom a home had previously been provided. So that the land might be free of mortgages and indebtedness existing, he directed that other real estate be sold, and the proceeds devoted to this purpose.

It is contended that the devise of the houses must be read as part of the residuary clause in the original will, in which the interests given to the children were made contingent upon their surviving the mother. Whether she acquired any life interest in the properties specifically granted by the codicil, on the theory that the dominant intent declared by the testator was to provide for her during life, need not be considered, since she is now deceased. That there was a gift of the house to Eugene, as well as properties to the other three sons, cannot admit of doubt, and we find no justification for holding that the interests of those named were to be determined as if part of the residue of the estate. Nowhere in the codicil are words used which indicate such an intention on the part of the father. By it he excepted this property from the general provision for the disposition of the balance of his land, and devised to each of his sons a house, as he had already provided for the daughter, though her interest was limited to one for life. He, at the time, directed that she should also further receive $50 a month.

It is true that a codicil to a will is to be distinguished from a new will, in that the latter revokes the first in its entirety, unless otherwise provided therein (Sigel's Est. (No. 1), 213 Pa. 14), whereas the former constitutes a republication of the original instrument (Williams v. Williams, 83 Pa. Superior Ct. 90), and must be read in connection with it: Whelen's Est., 175 Pa. 23; Wetter's App., 20 W. N. C. 499. "The rule is well established that a codicil shall not disturb the dispositions of the original will further than is absolutely necessary for the purpose of giving it effect": Schattenberg's Est., 269 Pa. 90, 93. In so far as its provisions are inconsistent with the will, changes made are effective: Billing's Est. (No. 1), 268

Pa. 67; Ball's Est., 276 Pa. 299; Mifflin's Est., 49 Pa. Superior Ct. 605. In the present case, the devise of the real estate to Eugene took this property out of the balance of the estate not specifically disposed of, and the conditions, controlling its division, making the shares of the children therein contingent on surviving their mother, have no application. The grant of the houses including the one given to Eugene, is inconsistent with the thought that there was an intention to include them in the residuary estate, wherein it was directed that everything was to be sold and the proceeds divided.

The four sons acquired vested interests in the houses set apart for them. Where the dominant purpose to so provide is apparent, the gift will not be cut down by later words used, unless they disclose clearly that this shall be the effect: Wettengel's Estate, 278 Pa. 571. We are not convinced that the provision for the use of the proceeds of sale, after the death of the wife, of other properties, for paying off encumbrances on these, indicates such a purpose. The law favors vested, rather than contingent, estates (Pearson's Est., 280 Pa. 224), and, in case of doubt, a construction that the interest is of the former class is to be made: Eichelberger's Est., 274 Pa. 576. It is true, as insisted by appellees, that the heirs at law are not to be deprived of their inheritance, unless express directions affecting this result appear, or are necessarily to be implied (Potter's Est., 257 Pa. 468; Deeter's Est., 280 Pa. 135), yet this rule gives way to a clearly expressed intention to the contrary: Line's Est., 221 Pa. 374; Deeter's Est., supra. Here, the purpose of the testator seems plain, from reading together the will and codicil, that each of his children shall receive one designated property for his or her own use, and all who survive the mother shall be entitled to share in the proceeds of anything that remains. To hold, as did the court below, that these houses were to be considered as if part of the residuary estate, and subject to the contin-

gency therein provided, fails to give due effect to the specific grant in the codicil, and cannot be sustained.

If the estate in Eugene was vested, then the petitioner, his surviving widow, was entitled to have the land set aside to her under the Intestate Act, and the proceedings having this for their purpose should not have been dismissed.

The decree of the court below is reversed, at the cost of the appellees, and the record is remitted for further proceedings.