Onderdonk's Estate.

Argued October 17, 1928.

Before Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ. ■

*Arthur Littleton,* and with him *Bevan A. Pennypacker* and *Francis B. Bracken,* for appellant, cited: Small v. Small, 242 Pa. 235; Lewis' Appeal, 108 Pa. 133; Mullen's Estate, 270 Pa. 321; Kellerman's Estate, 242 Pa. 3; Guenther's Appeal, 4 W. N. C. 41; Havir's Estate, 283 Pa. 292.

*J. Edgar Butler,* for appellee, cited: Sigel's Estate, No. 1, 213 Pa. 14; Williams v. Williams, 83 Pa. Superior Ct. 90; Whelen's Estate, 175 Pa. 23; Wetter's Appeal, 20 W. N. C. 499; Schattenbergs' Estate, 269 Pa. 90; Verniers' Estate, 282 Pa. 194.

OPINION BY LINN, J., December 14, 1928:

By his will made in 1887, testator intended to benefit equally his five brothers and sisters; by codicils made in 1893, 1909 and 1914, he expressed a different intention, but in phraseology that left his meaning in some doubt; two appeals on the subject reached this court: Onderdonk's Estate, 87 Pa. Superior Ct. 518 and 521. We need not repeat what is there said by this court and in the adjudication of the Orphans'

Court set forth at page 522, etc., in construing the will and codicils. In the first appeal we agreed with the court below in holding that on the death of testator's sister Mary, one-half of the income from her original share was payable by the trustee to testator's brothers and sisters, who survived Mary, and the other half to Mary's son, F. Percy Vail, whose share in the income payable to Mary under the will as originally drawn, was reduced to one-half by the first codicil. In the other appeal we also affirmed the conclusion that by the third codicil there was an implication that on the death of Charles, his children were to be benefited only to the extent of the legacies specified in that codicil.

The present appeal comes from another adjudication—that on the account of the trust for the sisters Eudora and Cynthia (see 87 Pa. Superior Ct. 524). Of the five brothers and sisters only two now survive, George and Cynthia; Mary's son, F. Percy Vail survives and claims all of the income released by Eudora's death, which his mother had been receiving after Eudora's death; George and Cynthia contend that they are entitled to one-half of it on the theory that the first codicil reducing by one-half the share F. Percy Vail would have taken by the original will, applies to such portions of income as may be released by the death of one for distribution among surviving brothers and sisters. "The rule is well established that a codicil shall not disturb the dispositions of the original will further than is absolutely necessary for the purposes of giving it effect": Schattenberg's Est., 269 Pa. 90, 93; Vernier's Est., 282 Pa. 194, 198. Applying that rule to testator's will and codicils when it was sought to exclude George from participating in the income released by the death of Eudora, Judge Gest said in one of the adjudications below: "Now in his will the testator contemplated equality of interest in his residuary estate among his five brothers and sisters, but gave Charles his share absolutely,

while he gave the 'shares' of George and the three sisters in trust during the life of the survivor 'of all his brothers and sisters,' and the income of one dying without issue was to be paid among all his brothers and sisters then living or their issue, etc., while, on the termination of the trust, the principal was to be divided among the descendents of George and the sisters, etc.

"The first codicil of January 4, 1909, altered the trust as to the 'share' of Mary O. Vail; the second codicil of December 7, 1909, made the change noted as to the 'share' of George V. Onderdonk, and the third codicil, of November 10, 1914, 'revoked and cancelled' the estate given to Charles S. Onderdonk, and gave his 'share' in trust for him, subject to the trusts relating to the sisters and George V. Onderdonk, with remainders over at his death. What the testator did therefor by the second codicil was to give in trust for George V. Onderdonk, not a one-fifth interest in the residuary trust estate, but $15,000 'to be held in trust under all the terms and conditions set forth in the trusts contained in the will,' but the terms and conditions of the trust for Eudora and Cynthia, however, were not changed by the codicil, which reduced the interest of George to a flat $15,000 instead of a one-fifth of the entire residue. These provisions, were, on the contrary, 'ratified, confirmed and republished in every particular' by the third codicil, and I therefore can see no just reason for excluding him [George] from participating in the income released by the death of Eudora without issue. Indeed, in the last codicil, which makes a very similar direction in reference to Charles' share, this portion is given to the trustee in trust for Charles, and the testator significantly adds, 'under and subject to all terms and conditions set forth in the trusts contained in my will relative to my sisters and George V. Onderdonk,' and this codicil was

written after the second codicil revoked George's 'share' of the residuary estate and substituted the $15,000 trust for it.

"I therefore hold that the income released after the death of Eudora, namely one-half of the income of the present trust estate held for her benefit and that of Cynthia, should be awarded ........ one-fourth in trust for Charles S. Onderdonk; one-fourth in trust for George V. Onderdonk; one-fourth in trust for Mary O. Vail and one-fourth in trust for Cynthia O. Hunt."

The same process of reasoning leads to the conclusion reached below in the adjudication now before us that the only purpose of the first codicil was to deprive Mary's child, F. Percy Vail, of one-half the original share theretofore given in the will; that the scope of the codicil in question will not be extended beyond what it clearly states; and that F. Percy Vail is therefore entitled to the share of his mother's income from Eudora's share of principal.

The decree is affirmed, at the cost of the appellants.

KELLER and GAWTHROP, JJ., dissent.