## Glant Will

*S. Richard Harr* and *Arthur C. Dorrance, Jr.,* for petitioners.

*Charles V. Snyder, Jr.,* for Attorney General.

*Lawrence E. Stengel,* guardian and trustee ad litem.

BOWMAN, P. J., February 12, 1969.—Mary Helen Glant died testate November 17, 1966, leaving a will dated March 31, 1961, and five codicils thereto, which

were admitted to probate by the Register of Wills of Lancaster County on November 23 and December 13, 1966, and upon which letters testamentary were granted to Richard Harr and the Conestoga National Bank of Lancaster, later and now known as the Conestoga National Bank.

On November 13, 1968, Richard Harr, coexecutor of the will of Mary Helen Glant, and the Conestoga National Bank, coexecutor and sole trustee under the will, filed a petition under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §831, et seq. The petition requests this court to construe the legal effect of testatrix' self-drawn codicil no. 1, dated August 2, 1961.

Item 12 of the will creates a trust of the residuary estate for the lifetime of testatrix' half-sister, Edna Glant Saunders, and provides that on the latter's death the principal is to be distributed 7/16ths to Franklin and Marshall College, 7/16ths to Lebanon Valley College, and 2/16ths to the Lancaster General Hospital. The pertinent clauses of item 12 are:

"(1) The gift to each institution mentioned is for the purpose of establishing a GLANT-GIBSON-GLUNT EDUCATIONAL LOAN FUND. The amount received by each institution hereunder shall be invested and the net income therefrom shall be employed in making loans without interest to assist needy and deserving students obtain a college or nursing education, as the case may be. Should a male or female student receiving loans at one of said Colleges while preparing for a nursing career, pursue such training in any approved hospital with or without graduation from the College, it is intended that the College continue loans to such student otherwise qualifying, during his or her training period in such hospital.

"(2) The loans shall be repaid on a monthly basis after the student enters upon his or her career at such

rate of payment in relation to earnings received, as the lender shall determine. The governing boards of the institutions named herein may designate appropriate committees to determine who shall be recipients of the loans, the amounts thereof, and the details of repayment.

"(3) If, in the opinion of the authorities of a College designated herein, the need of principal or income for the aforementioned purposes no longer exists at some future date, the governing board is authorized to distribute the same to a similar college for the same purposes, or to a trade or technical school to assist needy and deserving students obtain training there, all upon the terms and conditions hereinbefore set forth, and all said institutions to be located in relatively the same geographical area. Thereafter the College originally named herein shall have no responsibility for the funds distributed to another institution.

"(4) I desire that the availability of the aforesaid loan funds be made known in an appropriate publication in which such information is generally carried such as Feingold's 'Scholarships, Fellowships and Loans.'

"(5) I desire, but do not direct, that qualifying applications for loans be regarded kindly from descendants of Samuel Sears Glant (my father), John Glant and James Glant (my uncles), Theresa Glant Wesley (my aunt; especially Michele Pack and Marsha Ann Pack, now of Pittsburgh), Mattie Glant Landis (my aunt), Harvey Gibson (my maternal uncle) and the Glant families of Altoona, Pennsylvania. This is precatory and not mandatory, and shall not be so interpreted as to impair my plan for a charitable trust exempt from the rule against perpetuities."

The provisions of codicil no. 1, dated August 2, 1961, which is the only codicil having any bearing on the question here involved, are quoted in full:

"2nd August 1961. This is to be added to my will Codicil No. 1. Mrs. Harold Aukers children any of *Therssa & Dent Wesleys' great* or *grandchildren* (Altoona Pa)—*John Glant III* Harrisburg Pa. *Ira 'Bix' Glant,* Harrisburg or *their heirs.*
Lester & Elizabeth Glant Carl, Lancaster, Pa. *heirs.*
Orlando Glant heirs)—(Glenn Glant & heirs
Lewistown                    Harrisburg, Pa.
also his brother Rev. William Glant (near Milton)
& heirs                                    Pa.

are all to be included in the educational fund. also Ralph Landis and Nattie Glant Landis
heirs Lewistown Pa. and Frank Glant
now
(/deceased)
heirs of Lewistown Pa."

By letter dated July 18, 1967, the Acting Chief of the Gift and Estate Tax Branch of the Internal Revenue Service advised Richard Harr, one of the executors, that the Internal Revenue Service construed codicil no. 1 to create a bequest for the benefit of a special class and for a private purpose, with the result that the Glant estate was not entitled to the charitable deduction provided in section 2055 of the Internal Revenue Code. The letter includes a statement that a construction of the will and codicils "could clarify the conflict between those provisions apparently creating both a charitable and a private purpose for the educational loan fund."

Obviously pursuant to such suggestion from the Internal Revenue Service, the executors and trustee instituted the declaratory judgment proceedings in this court. On the same date, the president judge of the orphans' court entered a preliminary decree which accepted jurisdiction, and appointed Lawrence E.

Stengel, Esq., guardian ad litem and trustee ad litem for all minor, unborn and unidentified persons who might have or claim any interest under codicil no. 1 superior to the interest of those named in item 12(5) of the will. December 20, 1968, was set as the date for a hearing on the merits of the petition, and it was directed that appropriate notice of the hearing be given by personal service upon all those made party to the proceedings.

On November 13, 1968, upon a petition filed by the executors and the trustee under section 707 of the Orphans' Court Act of August 10, 1951, P. L. 1163, 20 PS §2080.707, as amended October 14, 1963, the court directed that a citation issue to Drew J. T. O'-Keefe, Esq., United States Attorney for the Eastern District of Pennsylvania, to show cause why the United States of America, in its capacity as taxing authority, should not be authorized to appear as a party in interest in connection with the declaratory judgment proceedings.

At the hearing on December 20, 1968, the court was furnished with an affidavit of service upon (1) the United States Attorney for the Eastern District of Pennsylvania; (2) the Commissioner for the Mid-Atlantic Region of Internal Revenue Service; (3) the Attorney General of the United States; (4) the Attorney General of the Commonwealth of Pennsylvania, parens patriae; and (5) the individuals named in codicil no. 1 who were made party to these proceedings. Of these individuals, only the Attorney General of the Commonwealth of Pennsylvania entered an appearance at the hearing. In the absence of objection by the United States of America, the court executed a decree authorizing it to appear as a party in interest in these proceedings.

Counsel for petitioners presented oral argument and submitted a memorandum of law in support of the

contention that the individuals named in the codicil were in the same general class as, and had no entitlement superior to, the persons named in item 12(5) of the will. Lawrence E. Stengel, Esq., the guardian ad litem and trustee ad litem appointed to represent any minor, unborn and unascertained persons named in the codicil, presented oral argument and submitted a memorandum of law in support of his contention that the rights of his wards were superior to the other relatives named in the will. Charles V. Snyder, Jr., Esq., who appeared for the Attorney General, as parens patriae, stated he was satisfied that the interests of the charities were properly represented and accordingly did not consider it necessary to present a separate argument on the issue before the court.

After a careful review of the provisions of the will and codicil, considered in light of the opposing contentions made by the guardian ad litem and trustee ad litem, the court concludes that testatrix did not intend those named in the codicil to have any rights superior to the persons named in item 12(5) of her will. When Miss Glant stated that named relatives were to be "included" in the educational loan fund, we are of the opinion that she merely evidenced an intention to expand the roster of those whose applications were to be "kindly regarded" by the administrators of the charitable trusts. Had she wished to give this group preference over her other relatives, we believe she would have added an express statement in the codicil to that effect.

Mr. Stengel maintains that the codicil places the individuals named therein in a special class with the legally enforceable right to receive loans upon application therefor. While, as stated above, the court does not find the meaning of the codicil ambiguous, even if it is viewed as susceptible of two interpretations,

the one suggested by the petitioners must still prevail. The will specifically states that the dominant intention of testatrix was to create "a charitable trust exempt from the rule of perpetuities." Because of this dominant intention, she expressly provided that her hope certain relatives would be "kindly regarded," should be considered precatory rather than mandatory. There is nothing in the codicil from which to draw the conclusion that the dominant intention had changed in the several months by which it followed the will. In Rainear Estate, 304 Pa. 539, 543, it is stated:

"It is a well established rule of testamentary interpretation that a will and codicil must be construed together and that a codicil shall disturb the dispositions of the original will only where its provisions are plainly inconsistent with the will: Vernier's Estate, 282 Pa. 194, 198; Warne's Estate, 302 Pa. 386, 394. If, however, the codicil is subject to two interpretations, one of which follows the main purpose as expressed in the will and the other is not consistent with it, the consistent interpretation will be adopted, because, generally speaking, there is no presumption that a codicil is intended to change a will: Bissell's Estate, 302 Pa. 27, 32 . . ."

See also Boyer Estate, 372 Pa. 553. Judged by this precept, it is clear that since the main purpose of testatrix was to create a charitable trust, any interpretation which would frustrate that purpose must be rejected in favor of the interpretation suggested by petitioners which puts the relatives named in the codicil on the same footing as those named in the will. In so finding, we have carefully considered the argument advanced by the guardian ad litem and trustee ad litem that since decedent did not add the word "also" to the language used (in the codicil) so that the pro-

visions of the codicil would read "are *also* all to be included in the educational fund." it follows that the persons described in codicil no. 1 "are not in the same general class as, and do have entitlements superior to, the persons described in item 12(5) of the will." We reject this contention. Notwithstanding the absence of this word, there is nothing in the codicil to indicate an intent that the persons named should be *more* "kindly regarded" than those named in the will. As stated previously, had she so intended, she would have so stated. We, therefore, enter the following decree:

And now, February 12, 1969, it is ordered and decreed that the persons named or described in codicil no. 1 are in the same general class as, and have no entitlement superior to, those persons named or described in item 12(5) of the will.