## Bissell's Estate.

Argued October 7, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*John G. Buchanan,* of *Smith, Buchanan, Scott & Gordon,* with him *Harry S. McKinley,* for appellant.—In the absence of an express revocation, a provision of a will is not to be stricken out unless there is an utter repugnancy between it and a provision of a codicil: Lewis's App., 108 Pa. 133; Reichard's App., 116 Pa. 232; Phillips's Est., 30 W. N. C. 241; Whelen's Est., 175 Pa. 23; Sigel's Est., 213 Pa. 14; Dobbins's Est., 221 Pa. 249; Schattenberg's Est., 269 Pa. 90; Baugh's Est., 288 Pa. 308; Mengel's Est., 296 Pa. 99.

*Edwin W. Smith,* with him *John C. Bane, Jr.,* for appellee.—The court very properly held that nothing passed to Mrs. Robert W. Bissell in this case under the will of her husband; that if she took at all she took under the will of Mrs. Eliza S. Bissell. Our authorities seem to be clear that, Robert W. Bissell, having died before his mother, even if his will could be held to be an exercise of the power of appointment, it was quite ineffective in view of the fact that there was nothing at the time of his death upon which it could operate. But Robert's share did pass under the intestate law as though the property had belonged to him at the time of his death. There is no lapse or postponement: Bruner's Est., 14 Pa. Dist. R. 124; Nichols v. Haviland, 1 Kay & Johnson's Rep. 504; Robison v. Female Orphans' Asylum, 123 U. S. 702.

OPINION BY MR. JUSTICE SADLER, November 24, 1930:

Eliza S. Bissell died testate on March 6, 1929, at the age of ninety-nine. Her last will was dated August 19, 1921, and was supplemented by two codicils, to be hereafter referred to. In the first four paragraphs of the will no reference is made to any trust for any of the legatees, but the 5th paragraph does provide in such manner for her stepson, James. By the 6th paragraph

of the will the residue of the estate was divided into 56 equal shares, of which 9 were allotted to a son, Robert, with whose interest we are now concerned. All of the portions were, however, given to the "executors, as trustees, [to] hold the above mentioned shares bequeathed to them in trust upon the conditions and subject to the trusts hereinafter set forth," including, of course, the 7th paragraph following, which directed that if any child should predecease the testatrix, without leaving lawful issue surviving, his or her portion should be divided among the surviving brothers and sisters.

In the 8th paragraph, the trusts are again the subject of consideration, and the uses for which the funds are to be held defined, with the direction to pay the income to the ones named, and "to pay and distribute the corpus of said trust estate to such person or persons and for such estate as the said Robert W. Bissell [and three other children] may, by will or any writing in the nature thereof, appoint, and, in default of such appointment, the corpus of said trust estate shall then be distributed to such person or persons as would be entitled to receive the same if the principal had belonged to said Robert W. Bissell [and the other brothers], and they or either of them, had died intestate." The 9th paragraph permitted an earlier termination of the trust as to Robert, and, in such case, the immediate payment of the principal to him was provided for. It will thus be noticed that, in so far as the residuary legatees are concerned, they took in trust under the 6th paragraph, subject to the provisions of the 7th and 8th, the former providing for the disposition of their shares in case of the lapsing of the legacy, and the latter directing that, upon the death of any beneficiary, his share should pass by way of appointment made by him, or, upon failure to make such, to the persons entitled under the intestate laws as if his share of the corpus had already been transferred to the legatee.

On January 17, 1925, a first codicil was written revoking the 6th paragraph of the will in its entirety in so far as the shares of the children are concerned, and supplying in its place a substitutionary provision by which each is given in trust one-seventh of the estate. A further important alteration here appears, when the deceased said, "My said executors, as trustees, shall hold the above mentioned shares devised and bequeathed to them in trust, *upon the conditions* and subject to the uses and trusts *as set forth in the eighth paragraph* of my will." No reference is made to the 7th section, which provided for the disposition of the estate if a legatee predeceased the testatrix without issue, but it does republish the 8th paragraph, which fixed the manner of disposal of the son's share where he made an appointment by will, or death occurred either before or after the mother. It was contended, and the position was sustained by the orphans' court, that the 6th paragraph of the first codicil, altering the interests of the children, and regulating their final disposition, in case any should die, made necessary the distribution of Robert's share in the manner theretofore fixed by the 8th paragraph of the will. This clearly showed an intention to further disregard, and, in effect, revoke the 7th clause of the original, which had provided for the contingencies of a child's death before the testatrix.

A second codicil, executed less than three months therafter, dated March 19, 1925, provided for the distribution of the portion held in trust for another son, Albert, and directed that if he should die without issue, his widow should not receive her husband's portion, as directed by the 8th paragraph, republished in the first codicil. In his case, the marriage had taken place after the execution of the first addition to the will, and the wife did not meet the approval of the testatrix, and express exclusion of her from any benefits arising was therefore directed. Again, there was repeated the direction that the trust fund created by the 6th paragraph,

as amended, should be effective, and that the share of any child should be distributed as provided in the original 8th clause of the will, which, as we have noticed, gave power of appointment, or, in default thereof, directed that each part be divided amongst those entitled as if he had possessed it and died intestate, but expressly directed that this disposition should not apply in the case of this legatee named. It will further be noted that, at the time of the writing of the will, and the preparation of the codicils, Robert Bissell, the son, had been married for twenty-one years, and no purpose to deprive his wife of the husband's interest is disclosed, as expressly appeared in the second codicil dealing with the share of Albert. Robert Bissell, one of the sons, predeceased his mother on January 18, 1929, leaving a will, by which he gave his entire estate to his wife for life, with the power on her part to dispose of it by testament.

This controversy arises over the right of Robert's widow to share in the trust fund provided for her husband by the mother's will. Had he survived her there could be no question as to the proper conclusion, but the contention is made that, having predeceased the testatrix, leaving no children, the 7th paragraph of the original will is applicable, and his surviving brothers and sisters took to the exclusion of the wife. On the other hand, the court held the 7th paragraph was impliedly revoked, and the provisions of the 8th controlled. If this be true, then the widow of Robert took thereunder: Sturgis's Est., 205 Pa. 435; Robison v. Female Orphans' Asylum, 123 U. S. 702.

As already noticed, the 6th paragraph of the will was changed by the first codicil, and therein it was directed that the shares should be held under and subject to the provisions of the 8th. No mention was made of the 7th, which provided solely for the contingency of one of the residuary legatees dying without issue before the mother, a direction not inconsistent with the 8th, which permitted any of the legatees to fix the par-

ties who should take by their own will. That it was not the intention of Mrs. Bissell to exclude the wife of her son Robert becomes more apparent when we consider the writing in the second codicil, expressly withdrawing from the benefits of her estate the wife of a second son, who married after the first codicil was executed.

It is of course necessary to determine the intention of the deceased, and that must be decided from an examination of the will and the two codicils, for the latter are part of the former annexed for the purpose of expressing some additional intent. Though the original document provided in paragraph 7 for a possible condition where a child predeceased the mother, yet the first codicil as well as the second shows that the fund of one whenever dying should pass as provided by paragraph 8, which is inconsistent with the thought that the 7th was to remain in effect. As noticed, when the possibility of an undesired outsider acquiring a share became clear, the testatrix was careful, as shown by the second codicil, to expressly provide that such event should not take place. This was not done in the case of Robert, though he had been married for many years, and had no children.

It is true that a codicil to a will is to be distinguished from a new will, in that the latter revokes the first in its entirety, unless otherwise provided therein (Sigel's Est., 213 Pa. 14), whereas the former constitutes a republication of the original instrument and must be read in connection with it: Whelen's Est., 175 Pa. 23; Wetter's App., 20 W. N. C. 499. The rule is well established that the codicil will not disturb the disposition of the will further than is absolutely necessary for the purpose of giving it effect (Schattenberg's Est., 269 Pa. 90), but, in so far as the provisions are antagonistic, the changes made are to be enforced: Vernier's Est., 282 Pa. 194. There is no presumption that the codicil is intended to make a change in the will, but the two must be construed

together (Baugh's Est., 288 Pa. 308), and, if inconsistencies appear, or an alteration of intention is made evident, the directions of the latter will control.

The first codicil, in the present case, expressly directs that the one-seventh share of each child held in trust shall be divided as directed in the 8th paragraph of the original instrument, and no mention whatsoever is made of the 7th. The purpose to exclude the operation of the latter, except in the case of Albert, likewise appears in the second codicil. If we take the words of Mrs. Bissell herself, then the principal of the trust fund given to Robert, in the absence of appointment by will, was to pass under the intestate laws, as if he had owned the principal. When the first codicil was written, the words of the trust as set forth in the original 6th paragraph were expressly altered, and the manner of the disposition of the corpus of the estate of each child fixed anew.

The instruments in question were carefully drawn and show the testatrix clearly understood the effect of the provisions disposing of her estate, for by the second codicil explicit directions were given that the wife of Albert should not be a beneficiary. A reading of the words used, particularly the express statement that the one-seventh to each child should pass as provided in the 8th paragraph, makes this conclusion inevitable. The 7th, under which appellants claim, was impliedly revoked. It would be clearly inconsistent to hold that the clause referred to controlled, when the testatrix omitted all reference to it, and expressly directed the distribution should be under the 8th, which furnished a full and complete scheme for dividing her estate, covering, as it does, both contingencies,—the possibility of death before or after that of the mother. In the second codicil, the 7th paragraph is revived by referring to distribution under the 6th clause of the original testament, which provided a trust, and subjected it to the limitations which followed immediately thereafter, and

as to this share of Albert, and to it alone, the disposition made in the 8th paragraph was, in terms, revoked. A careful examination of both will and codicils leads to the conclusion that the distribution of Robert's portion of the estate, made by the orphans' court, was correct.

The decree of the court below, appealed from separately by the trustee and the surviving brothers and sisters, is affirmed, costs to be paid by the respective appellants.