## Warne's Estate.

388

Argued December 5, 1930. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Carlyle H. Ross*, with him *Evans, Bayard & Frick*, for appellants, J. Roy Vetterlein et al.—The will was absolutely without effect as to the distribution of the property intended to pass thereunder, there was no effective exercise of the power of appointment, and the property must pass under the will of William B. Warne,

Sr., which provides, in such event, for an intestate succession as set forth in the testamentary instruments: Lyndall's Est., 2 Pa. Dist. R. 476; Boyd's Est., 199 Pa. 487; Johnson's Est., 276 Pa. 291; Baughman's Est., 281 Pa. 23; Bingaman's Est., 281 Pa. 497.

William B. Warne, Sr., died in 1894 before the Act of June 29, 1923, P. L. 914, took effect. The old law regarding the time when intestacy is to be taken as having occurred is to be followed as set forth by Judge LAMORELLE in Whiteside's Est., 13 Pa. D. & C. 220, 221; Line's Est., 221 Pa. 374; Wood v. Schoen, 216 Pa. 425.

*Wm. Clarke Mason,* with him *Bevan A. Pennypacker,* for appellant, Fidelity-Philadelphia Trust Co., surviving executor under will of Emma L. Warne, deceased.— The share of testator's estate held in trust for the life of Theodore V. Warne vested in Emma L. Warne by reason of the exercise of the power of appointment in the will of William B. Warne, Jr., subject to Theodore's life estate and his right to appoint the same: Lyndall's Est., 2 Pa. Dist. R. 476; Freeman's Est., 35 Pa. Superior Ct. 185; Freeman's Est., 280 Pa. 273.

Since the language of the second codicil is not ambiguous, the adjudication is at fault in undertaking to substitute words for those used by the testator, to change the meaning of the codicil: Thomas's Est., 241 Pa. 290; Hauer's Est., 16 Pa. Superior Ct. 257; Line's Est., 221 Pa. 373; Houser v. Houser, 268 Pa. 401; Schmidt's Est., 183 Pa. 641; Alsop's App., 9 Pa. 374.

Under the will and codicils the persons taking under the gift to those entitled as next of kin are to be determined as of the date of testator's death: Stoler's Est., 293 Pa. 433; Warne's Est., 14 Pa. D. & C. 105.

*Maurice Bower Saul,* of *Saul, Ewing, Remick & Saul,* for appellants, Lydia W. Curtis and Frances Vetterlein, cited: Stoler's Est., 293 Pa. 433; McFillin's Est., 235 Pa. 175; Wood v. Schoen, 216 Pa. 425; Buzby's

App., 61 Pa. 111; Line's Est., 221 Pa. 374; Vernier's Est., 282 Pa. 194; McKallip's Est., 291 Pa. 304.

*William A. Schnader* and *G. Herbert Jenkins,* for appellees.—Standing alone, the will clearly requires distribution to testator's next of kin determined as of the date of the death of his surviving son: Leech's Est., 274 Pa. 369; Wood v. Schoen, 216 Pa. 425.

A will and its codicils must be construed together, and the codicils should not be strained or enlarged to change the plan and provisions of the will, except to the extent absolutely necessary to carry out the particular provisions of the codicils: Reichard's App., 116 Pa. 232; Whelen's Est., 175 Pa. 23; Sigel's Est., 213 Pa. 14; Dobbin's Est., 221 Pa. 249; Cassidy's Est., 224 Pa. 199; Billings's Est., 268 Pa. 67; Schattenberg's Est., 269 Pa. 90; Hollinshead's Est., 273 Pa. 573; Vernier's Est., 282 Pa. 194; Baugh's Est., 288 Pa. 308; Dutton's Est., 301 Pa. 94; Roats's Est., 30 Pa. Superior Ct. 521; Williams v. Williams, 83 Pa. Superior Ct. 90; Onderdonk's Est., 95 Pa. Superior Ct. 25.

OPINION BY MR. JUSTICE SADLER, January 5, 1931:

On May 25, 1894, William B. Warne died leaving a will, with two codicils attached, by which he devised his estate in trust, directing that the net income be paid to his wife, Emma, for life, and thereafter divided in equal parts between his two sons, Theodore and William, Jr., as long as they should live, free from any debts or engagements contracted by them. On the death of either, one-half of the corpus was given to the deceased son's living children, or the issue of any dead, and, if none such were in esse, then the whole income passed to the remaining brother. The following phrase in the will, to be viewed in the light of the codicils executed shortly thereafter, led to the present controversy: "Should both of my said sons die without issue, then upon the death of the survivor I direct that my estate shall go to such

persons as would then be entitled under the laws of this State, if I had died intestate."

Both mother and sons are now deceased, leaving no children, and, if we are to construe the will as originally written, it is clear that the estate would be divisible among those heirs and next of kin of the testator living at the time of the death of Theodore, the last life beneficiary named. As was said in Wood v. Schoen, 216 Pa. 425, 431: "We cannot agree with the contention of the learned counsel of the appellee that the effect of the disposition of the remainder by the will is the same as if the testator had made no disposition of that part of his estate and had died intestate as to it. In the latter instance, it may be conceded that the intestacy would have taken effect as of the date of the testator's death, and the persons then competent would have taken the estate subject to the prior life tenancies. But the manifest purpose of the testator was to change the effect of an intestacy occurring at his death, and to give his real estate to persons other than those who would be his heirs at that time, and hence he devised it, on the death of the life tenant, to those 'who would then be entitled,' and not to those 'who are entitled' under the intestate laws of the State...... The language employed leaves no doubt as to the persons who were intended as his beneficiaries." We are not impressed with the argument that Warne used the word "then" frequently in his will and codicils, intending thereby at times only to suggest that the thought to be conveyed was the equivalent of the words "in that event." In the clause mentioned, he clearly employs it to designate a period of time when the distributees should be determined.

It will not be questioned that a will, effective prior to the Act of June 29, 1923, P. L. 914, which legislation provides a new method for distribution of the estate of a decedent dying intestate, refers to those entitled to take as of the date of testator's death (Stoler's Est., 293 Pa. 433; Kidd's Est., 293 Pa. 56), unless a contrary

purpose is made evident by the language used, and this is true though a spendthrift trust has been set up for a life tenant: McFillin's Est., 235 Pa. 175. If, however, a time has been fixed for the determination of those entitled to share, the rule enunciated in Wood v. Schoen, supra, applies: Leech's Est., 274 Pa. 369. In the present case, the date of the death of the last surviving life tenant, who happened to be Theodore, was named as the period for determining who were the heirs and next of kin of testator entitled to take in case of possible intestacy.

Based on the terms of the last testament itself, we have no question as to the correctness of this conclusion, but it does not stand alone, for it was supplemented by two codicils, necessarily quoted in full, so that a proper understanding of the rights of the parties here contesting may be made clear. The first was added nine days after execution of the will, and reads: "I direct that after my wife's death, if both of my sons should depart this life without leaving children or issue of deceased children them surviving, then the survivor of my said sons shall have the power to dispose of my estate to such person or persons and for such estates as he, the said survivor, shall by his last will and testament limit and appoint. In default of such will my said estate shall be distributed as my property under the intestate law. The power of testamentary appointment above given shall only be exercised in case my said sons shall both die without issue. If either leave children or issue of deceased children them surviving then my estate shall go to such children or issue as provided in my will. I ratify and confirm in all other respects my said will." It will be noticed that the real purpose of this addition was to grant a power of appointment to the surviving son, to be effective if both died without issue.

A second codicil in effect supplanting the first, was written forty days later to carry out an apparent intention to limit the amount of the estate the sons could dis-

pose of by appointment. It reads: "First. I direct that each of my sons shall have the right to dispose of one-half of my estate by his last will and testament to such person or persons, and for such estate or estates, as he may so direct, limit and appoint, such right to be exercised whether he leaves issue or not, and whether he survives his mother or not: If either of my said sons shall leave no will, then one-half of the estate held in trust for the one so dying without a will shall go to his children and issue of deceased children as set forth in my last will and testament: Should the son so dying without a will leave no children or issue of deceased children, then I direct that the whole estate shall go to such persons as may be directed by the last will and testament of the other son, and in default of a will by him, then to his children and issue of deceased children: If neither of my sons leave wills nor children nor issue of deceased children them surviving, then my estate is to be distributed to my next of kin and heirs at law." And he added: "In all other respects I confirm my said last will and testament," which, as we have already noted, definitely fixed the time when the heirs and next of kin entitled to share should be determined.

William, Jr., died on April 11, 1917, without issue, having made a will, dated August 9, 1913, by which he devised the one-half share over which he had been given control, as a result of the second codicil, to his mother, who was then living. The trustee named by the father filed an account, and the orphans' court awarded to her this proportion of the residuary estate. She died in 1926, and her demise was followed by that of Theodore, the second son, on November 24, 1929, leaving no issue. He also left a will, dated April 9, 1906, giving his share of the estate to his mother for life, and, thereafter, or if she predeceased him, to William, also dead. As a result, his attempted disposition of one-half the father's estate was inoperative: Linnard's Est., 9 W. N. C. 566; Boyd's Est., 199 Pa. 487; Johnson's Est., 276 Pa. 291.

The portion remaining, over which he had the power of appointment, is therefore distributable amongst the heirs and next of kin of the father. Whether these shall be determined as of the date of his death, or of that of Theodore, is the question raised by certain appellants, while others, claiming through the mother, insist that, since the surviving son left no effective will, the property passed, under the will of William, Jr., to her as his devisee. To reach the proper conclusion, as to those entitled to share in the fund for distribution, it is necessary to examine the words of the will, as affected by the two codicils.

The legal effect of such testamentary additions should first be considered. In Bissell's Est., 302 Pa. 27, we said: "A codicil to a will is to be distinguished from a new will, in that the latter revokes the first in its entirety, unless otherwise provided therein (Sigel's Est., 213 Pa. 14), whereas the former constitutes a republication of the original instrument and must be read in connection with it: Whelen's Est., 175 Pa. 23; Wetter's App., 20 W. N. C. 499. The rule is well established that the codicil will not disturb the disposition of the will further than is absolutely necessary for the purpose of giving it effect (Schattenberg's Est., 269 Pa. 90), but, in so far as the provisions are antagonistic, the changes made are to be enforced: Vernier's Est., 282 Pa. 194. There is no presumption that the codicil is intended to make a change in the will, but the two must be construed together (Baugh's Est., 288 Pa. 308), and if inconsistencies appear, or an alteration of intention is made evident, the directions of the latter will control." "The clear provisions of a will are only to be affected by a codicil to the extent absolutely necessary to give effect to the codicil": Dutton's Est., 301 Pa. 94, 98.

The plan prepared by testator for disposition of his property was not complicated. He gave a life estate to the wife, and provided, under spendthrift trusts, for the distribution of the income to his two sons on her death.

If neither left issue, the estate was to be divided according to the intestate laws among his heirs and next of kin in existence when the surviving child died. He determined subsequently to give the sons the right to name those who should benefit, if it should happen no children were born to either, and therefore prepared the first codicil, conferring, in such contingency, on the survivor, the additional right to dispose of the entire estate, providing, however, that in case of default, his property should pass under the intestate laws to his heirs and next of kin, as originally provided in his will, which he, in express terms, ratified and confirmed, though he failed to expressly designate the time when the distributees should be determined. It is plain that his sole purpose was to grant to the survivor the additional power to dispose of his property, if there were no children, but the provision as to distribution under the intestate laws was to be effective only in case no will, executing the power of appointment, existed.

In any event, the first codicil was completely eliminated by the second, in which the testator disclosed an intent to allow each son to dispose of only one-half, depriving the survivor of the privilege to appoint as to the whole. Here, it is again provided that the estate should pass as if the testator had died intestate, as directed in the original will, without, however, definitely referring to the time when the heirs and next of kin should be determined, but the provision for such a distribution was to take effect only in case of default on the part of either son to exercise by will his privilege to dispose of the portion named. This contingency never arose, since both William, Jr., and Theodore left such instruments. We must therefore look to the testator's will to find those entitled to share. The testament as first written put it beyond the power of the children to determine the ultimate disposition of any portion of the estate. In the first codicil, the controlling thought was solely to give them jointly through survivorship power

to dispose of the whole, and, in the second, to each separately the privilege of dividing a part of the property. The direction as to distribution, according to the intestate laws, was to be effective only in case no wills were written. Such a situation did not arise, and the clauses in the two codicils, referring to the possible intestacy, under such circumstances, never became effective.

The purpose of the additions to the will was to grant to the children further power over the estate, and the reference to the taking by others, if they failed to exercise the privilege granted, was merely incidental, and dependent on conditions which did not happen. As was said in Line's Est., 221 Pa. 374, 379: "If any specific change is made [in a codicil] it negatives an intention to make other alterations in the provisions of the will." We think the principle there stated applicable here, for it is apparent that the intention of testator in making the two supplements to his will was to give to his sons control of the final disposition of his property should they so desire. Neither was written with the thought of altering the provisions as to the parties who would inherit, if the contingencies set forth by testator did not occur. In both cases, he reaffirmed the provisions of the testament first executed, and, under the circumstances, it must control in determining those entitled to share.

The majority of the orphans' court concluded in its adjudication that those entitled to take must be determined as of the death, in 1929, of the surviving son, Theodore, and we think correctly. The dissenting opinion of Judge LAMORELLE rests on the assumption that the codicils provided an entirely new scheme of distribution, and, as a result, the provisions of testator's will, as to the ultimate disposition of his property, were revoked and cannot therefore be considered in determining those who should inherit, if it became necessary to distribute under the intestate laws. As we have noticed, this change, if it can be said to have been made,

was to be effective only on the contingency that the sons left no testaments, but both did, and therefore the provisions of the will itself must be applied.

A different position is assumed by certain appellants, who claim the estate remaining passed, not under the will of the father, but of the mother, by virtue of the will of the deceased son, William, who predeceased her, leaving a will in which she was named as sole devisee of all interests over which he had control. The contention is based on the wording of the second codicil, which uses the phrase: "Should the son so dying without a will leave no children, or issue of deceased children, then I direct the whole estate shall go to such persons as may be directed by the last will and testament of the other son." It is urged the half share of Theodore therefore passed under the will of his brother William to the mother, or her estate. The court below properly construed the word "other" to mean "surviving," and the will of the survivor was ineffective to pass any property.

The codicil in question deprived the last son of the right to dispose of the whole estate, limiting the power of each to designate the taker of one-half. The evident intention was to give both control of an equal part, with the privilege of ultimately naming a distributee of his own choice. This thought, interjected into the second codicil, is to be read in connection with the provisions of the first, which allowed the survivor to dispose of all. The "other" evidently means the son "remaining"; to hold otherwise would allow William, Jr., to dispose of the entire estate, though the clear purpose of the second addition to the will was to limit his appointment to one-half, the portion which he actually devised and the mother received. If the contention of these appellants prevailed, it would give the mother's estate also the one-half as to which Theodore was alone given the power of appointment, though it could not pass to her by his will, because she predeceased him, and, as before noticed, his attempt to so appoint was abortive. The

further suggestion is made that, though the word "other" be considered as the equivalent of "surviving," then the mother's estate will share nevertheless in a distribution under the will of testator as one of his heirs at law and next of kin; but such position finds no support in our decisions: Stoler's Est., supra; Garrett's App., 249 Pa. 249.

The will and codicils have been carefully examined in an endeavor to determine the intent of the testator. Careful opinions were filed in the court below expressing the conflicting views of the sitting judges, and the contentions of the respective parties were skillfully presented here in both written and oral arguments. We are convinced that the adjudication as finally adopted by the majority of the court expresses correctly the testator's purpose, and the distribution was properly made among the heirs at law and next of kin of the father, who were living when the surviving son died in 1929.

The decree is affirmed at the cost of the respective appellants.