## Rainear's Estate.

Argued April 24, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*Thomas Stokes,* with him *James A. Montgomery, Jr.,* and *George Wharton Pepper,* for appellant.—The codicil makes an absolute gift to the widow of the securities and money: Hancock's App.; 112 Pa. 532; O'Neill's Est., 266 Pa. 9; Joyce's Est., 273 Pa. 404.

The codicil shows every intent to favor the widow: Watson v. Smith, 210 Pa. 190.

The bequest of personal property. is presumed to be absolute: Stephenson's Est., 30 Pa. Superior Ct. 97; Baugh's Est., 288 Pa. 308.

The testator intended the cash and securities to be an absolute bequest to the widow whether or not the sons accepted the business.

*Daniel C. Donoghue,* of *Donoghue, Gibbons & Donoghue,* for appellees.—The codicil replaced the provision in the will for the sons' personal security and substituted securities of the estate to be given to the wife as collateral security for her protection: Sheetz's App., 82 Pa. 213; Whelen's Est., 175 Pa. 23; Sigel's Est., 213 Pa. 14; Cassidy's Est., 224 Pa. 199; Thomas's Est., 241 Pa. 290; Billing's Est., 268 Pa. 67; Schattenberg's Est., 269 Pa. 90.

OPINION BY MR. CHIEF JUSTICE FRAZER, June 27, 1931:

This appeal is from dismissal of exceptions to an adjudication by the Orphans' Court of Philadelphia County.

Charles J. Rainear died September 10, 1929, leaving a will dated September 10, 1913, and codicil dated February 1, 1928. After minor provisions, the will, by paragraph third, directed the executors to transfer the business conducted by testator under the name of C. J. Rainear & Co. to his two sons upon condition that they "(B) Agree in writing with my wife, Charlotte A. Rainear, to pay to her the sum of fifty dollars ($50.00) per week from the date of my decease until her death or her remarriage, whichever shall first occur, and further agree with her to pay the sum of Thirty Dollars ($30.00) per month to the Building and Loan Associations in which she may be the owner of such stock. Such payments to such Building and Loan Associations shall continue until such stock matures or my wife re-marries, whichever shall first occur. My said sons shall further agree that all payments so made and all such stock in

such Building and Loan Associations shall upon maturity thereof belong absolutely to my wife; and (C) Deliver to my wife securities or assurances satisfactory to her that the conditions herein contained and the agreements relative thereto will be fully and faithfully carried out."

Should the sons refuse to accept the conditions of the bequest in paragraph 3, or should both of them predecease testator, then, by paragraph 4, he directed the executors "to set aside out of my estate a sufficient sum of money or other property as may be necessary to provide for the payments upon the Building and Loan Association stock as mentioned in the Third Paragraph of this Will and to insure the payment to my wife, Charlotte A. Rainear, of the sum of Fifty Dollars ($50.00) per week from the date of my decease for a period so long as she shall live or remarry, whichever shall first occur."

The codicil provides: "I wish to correct and add to my will originally made out......; Article Third—Section B—Make the Fifty Dollars ($50.00) read One Hundred Dollars ($100.00). Also that all Building Association in my name or her name must be carried on to maturity and such monies paid to the said Charlotte A. Rainear. In addition to Article C. of this same Third Section, all securities or money interest remaining in the Pennsylvania Company for Insurances on Lives and Granting Annuities, Hecker & Company, Goodbody & Company and Cadbury, Ellis & Haines, to be collected and passed over to the said Charlotte A. Rainear. These statements in Section third shall take care of any apparent contradictions said [set] forth in Section Fourth." Other provisions follow with which we are not at present especially concerned. The will is typewritten and obviously prepared by one learned in such matters; the codicil was written by testator himself.

The question before us, as stated by appellant, testator's widow, is, Do the specified securities and money

pass to the widow as an absolute bequest, by the terms of the codicil, or as collateral security for payments directed to be made to her by the will and codicil. Appellant contends for the former construction.

The auditing judge and the orphans' court found the sons had not accepted the business, under the conditions of the will and codicil, either expressly or by implication, and that the bequest to the widow, in the codicil, was not an absolute gift but was intended to be held as collateral security for the payments directed to be made to her; and ordered that, "since the two sons have an absolute interest in two-thirds of this fund so set aside as security, it being part of the residuary estate of the decedent, the widow must enter security......to protect the interests of the sons in remainder upon her death or remarriage."

It is a well established rule of testamentary interpretation that a will and codicil must be construed together and that a codicil shall disturb the dispositions of the original will only where its provisions are plainly inconsistent with the will: Vernier's Est., 282 Pa. 194, 198; Warne's Est., 302 Pa. 386, 394.* If, however, the codicil is subject to two interpretations, one of which follows the main purpose as expressed in the will and the other is not consistent with it, the consistent interpretation will be adopted, because, generally speaking, there is no presumption that a codicil is intended to change a will: Bissell's Est., 302 Pa. 27, 32. "The clearly expressed purpose of a testator is not to be overborne by modifying directions that are ambiguous and equivocal, and may justify either of two opposite interpretations. Such directions are to be so construed as to support the testator's distinctly announced main in-

---

* NOTE.—Attention is called to a typographical error occurring on page 394 of this case, and on page 33 of Bissell's Estate, 302 Pa. 27; the expression "......the directions of the latter will control" used in both cases, should be "the directions of the later will control."

tention...... It is a sound rule of construction that 'A codicil should not be held to interfere with any of the specific provisions of a will, unless its language naturally and obviously produce such result, or the terms of the codicil expressly recognize the alteration' ": Baugh's Est., 288 Pa. 308, 311, and cases there cited. Following the first-stated principle, we must hold to the construction of the codicil consistent with the main thought expressed in the original will—that the money and securities mentioned in the codicil were intended to be given the widow only as collateral security for the payments directed to be made to her, not as an absolute gift.

Had testator intended to make an outright gift, no reason exists why, in connection with it, he should have mentioned article C of the third paragraph, and the fourth paragraph, both dealing with guarantees for the payment of the annuity to his wife. Further, the court below found that, if this provision were to be construed according to appellant's contention, the sons, had they accepted the business under all attendant conditions, would labor under commitments which would leave "little or nothing" out of the estate for themselves; and, if the business were taken over by the executors, practically the entire assets of the estate must necessarily be set aside to secure payments to the widow. On the other hand, the auditing judge found the fund realized from the cash and securities in question, inventoried at approximately $268,000, properly invested would yield an annual income of approximately $10,000, a sum somewhat more than sufficient to pay the annuity to the widow and the building and loan dues, amounting altogether to $8,020 yearly, and that "It would not seem unreasonable to set aside securities yielding about $10,000 to insure yearly payments of about $8,000, especially where $5,000 would continue for life or [until] remarriage, and the balance for possibly 12 or more years, until some or all of the stock matured." This

latter circumstance particularly lends weight to the court's conclusion that this fund was intended to replace the necessity for personal security from the sons, or, if the sons did not assume the responsibility, to provide a definite fund not dependent on the business, the other chief asset of the estate.

We need not discuss other indications in the will and codicil that support the adjudication. While it is apparent from the codicil that, fifteen years after making his original will, testator desired to make larger provisions for his wife, there is no justification for concluding that, although he expressed himself ambiguously, testator meant to give his wife almost his entire estate, contrary to the provisions of the will itself, virtually disinheriting his sons, who had been associated with him in business for some twenty years.

The decree of the court below is affirmed; costs to be paid out of the estate.