Johnson Estate.

Argued March 21, 1969. Before BELL, C. J., JONES, COHEN, EAGEN and POMEROY, JJ.

304

 

*Eugene J. Brew, Jr.,* with him *Dale & Brew,* for appellant.

*William W. Knox,* with him *Knox, Graham, Pearson & McLaughlin,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, June 27, 1969:

This is an appeal from a decree of distribution entered by the Orphans' Court in the audit of a trustees' partial account awarding income and principal to the Hamot Hospital Association (appellee) instead of to the Zem Zem Hospital (appellant sur nom. Shriners' Hospital for Crippled Children of Pennsylvania).

William J. Johnson died testate November 14, 1961, leaving a will dated September 16, 1957, and a codicil dated March 21, 1958, and a second codicil dated June 30, 1960, all of which were duly admitted to probate. Mr. Johnson's will benefited many established charitable organizations located in Erie County, Pennsylvania. After making specific bequests (including ten gifts to charitable organizations of $10,000 each), his will directed that the residue of his estate be retained in trust and that specified sums or percentages be paid monthly to certain named individual beneficiaries. In Paragraph Seventh of his will, he directed that any income not distributed to the individual trust beneficiaries be paid as follows: *"Fifty per cent (50%) thereof to Zem Zem Hospital,* Erie, Pa. Twenty per

cent (20%) thereof to St. Vincent's Hospital, Erie, Pa. *Thirty per cent (30%) thereof to Hamot Hospital,* Erie, Pa. of which I am now a Corporator."*

Johnson further provided in his will that upon the lapse of five years from the death of his last surviving individual income beneficiary, the trust would terminate and the assets thereof would be distributed to the three above-named hospitals in the same proportions, i.e., 50 per cent to Zem Zem Hospital, 30 per cent to Hamot Hospital, and 20 per cent to St. Vincent's Hospital.

However, Johnson executed a codicil dated March 21, 1958, which raises the basic question here involved. In this codicil, the testator provided that the bequest of income and principal to Zem Zem Hospital would be revoked and the bequest to Hamot Hospital increased by the same amount if at any time prior to the termination of the trusts "the operation and management of Zem Zem Hospital shall not be under the direction and control of Trustees who are elected, appointed or otherwise chosen in a manner substantially as at the present time, by the general membership of Zem Zem Temple, A.A.O.N.M.S., with headquarters at Erie, Pennsylvania."

On June 30, 1960, the testator executed a second codicil, which deleted the name of one of the income beneficiaries who had died and made various changes required as a result of the beneficiary's death. This codicil stated: "I hereby ratify and affirm all other provisions of my said last will and testament dated September 16, 1957." No reference was made in this codicil to the codicil of March 21, 1958.

On September 11, 1967, the testamentary trustees filed a first and partial account showing total assets of $846,163.21. The audit statement filed by the trustees stated (1) that since two of the individual income

---

* Italics throughout, ours, unless otherwise indicated.

beneficiaries had died, substantial amounts of income had not been distributed, and (2) that certain important organizational changes had occurred in or with respect to the Zem Zem Hospital. The trustees asked for a determination of whether the trust income which was payable under the will to Zem Zem Hospital should be paid to Zem Zem Hospital *and* Hamot Hospital, or all to Hamot Hospital.

The Orphans' Court, after a hearing, concluded that the operation and management of Zem Zem Hospital was no longer under the direction and control of trustees who were elected, appointed or otherwise chosen in a manner substantially as of the date of the testator's first codicil (March 21, 1958). Thereupon, the Orphans' Court entered a decree directing distribution (a) of the entire 80 per cent of the trust income not earmarked for individual beneficiaries to the Hamot Hospital and the remaining 20 per cent to St. Vincent's Hospital, and (b) "at the appropriate time for the ultimate distribution of all the remaining [principal*] assets of said trust," in the same proportions.

The issues before us are whether (1) the findings of fact of the Orphans' Court are supported by sufficient, competent evidence, and (2) the conclusions drawn therefrom are correct, and (3) the Court abused its discretion or committed an error of law. *Elias Will,* 429 Pa. 314, 317, 239 A. 2d 393; *Zeedick Will,* 421 Pa. 44, 46, 218 A. 2d 755; *Abrams Will,* 419 Pa. 92, 213 A. 2d 638; *Kadilak Will,* 405 Pa. 238, 244, 174 A. 2d 870; *Williams v. McCarroll,* 374 Pa. 281, 298-299, 97 A. 2d 14.

Zem Zem Temple of Erie is a fraternal organization and is an integral part of the Shrine of North America. The Zem Zem Hospital was established for

---

* Since two of the individual income beneficiaries were still living, the time for distribution of principal had not yet arrived.

crippled children and was incorporated under the laws
of Pennsylvania in 1928. The by-laws of the corpora-
tion in effect as of the date of the will and at the
date of the first codicil (March 21, 1958) provided
that all members of the Zem Zem Temple in good
standing shall be the members of the Zem Zem Hos-
pital corporation. The by-laws further provided that
the members of the hospital corporation (i.e., mem-
bers of Zem Zem Temple) elect a board of eighteen
trustees, nine being residents of metropolitan Erie,
and nine being residents of each of the nine counties
comprising the jurisdiction of Zem Zem Temple. Trus-
tees were to be elected at the time of the annual meet-
ing of Zem Zem Temple. In addition to the eighteen
elected trustees, three specified officers of Zem Zem
Temple automatically were members of the Board of
Trustees of the hospital corporation. The board was
also permitted to elect three trustees "at large" who
were not required to be members of the hospital cor-
poration.

The Board of Trustees, which had the general
charge and management of the affairs of the hospital
corporation, elected its own officers and a superin-
tendent of the hospital. The Board of Trustees further
had the power to make rules for the government, ad-
ministration, management and conduct of the hospital
and for admission thereto.

In March of 1957, a directive was sent from the
national Shrine headquarters to all the temples, in-
cluding Zem Zem, informing the local temples that the
national organization was investigating and evaluating
all charitable projects being sponsored by the local
temples in their respective areas. This directive was
evidently prompted by concern on the part of the
national organization that some of the individual
temples were conducting charitable projects which con-
flicted with the charitable policies of the national or-

ganization, and that in some instances these individual projects were not operated in a sound businesslike manner. The directive indicated the possibility that selected individual charitable projects might be integrated into the national charitable organization. It should perhaps be noted at this point that the testator was a member of the Board of Trustees of the local Zem Zem Hospital corporation at the time of the receipt of the directive, and during the next two years (1958-1959) served as vice president of the corporation.

The record does not indicate what, if anything, happened concerning this development for some eight years following 1957. However, at the annual meeting of Zem Zem Temple on January 16, 1965, the membership was addressed by a representative of the national Shrine organization concerning the affiliation with the chain of hospitals operated by the national Shrine organization under the name "Shriners' Hospitals for Crippled Children" (a Colorado corporation). After discussion of the proposal, a vote was taken in favor of the affiliation and of offering the Zem Zem Hospital to the national organization. This offer was accepted at a national meeting in July, 1965.

In 1966, the articles of incorporation of Zem Zem Hospital were amended in two respects: (1) the name was changed to "Shriners' Hospital for Crippled Children of Pennsylvania," and (2) the body theretofore designated as the Board of Trustees was to be called the "Board of Directors," with five of the eighteen members to be elected from the Zem Zem Temple and the remainder "to consist of the members of the Board of Directors of the National Shriners' Hospitals, a Colorado corporation."

New by-laws were then adopted which made several changes in the membership of the Pennsylvania corporation as well as in the structure for administering the local hospital. Provision was made for so-

called non-elective members, which provided membership for those persons serving on the Board of Directors or Board of Trustees of the national charitable organization, the Colorado corporation.* These non-elective members were entitled to elect six members of the local Zem Zem Temple to serve as so-called elective members of the Pennsylvania corporation. Both classes of members were to elect the members of the Board of Directors of the Pennsylvania corporation from among that corporation's membership. *In addition to the Board of Directors,* the new by-laws provided for a *Board of Governors* charged with the administration of the local hospital. The thirty members of this Board of Governors are to be elected by the Board of Directors at its annual meeting "with the prior consent and approval of the Board of Trustees of the Colorado corporation." Qualification for membership on the Board of Governors requires that three must be elective members of the corporation, nine must be incumbent potentates of the various local temples included within the regional jurisdiction of the Zem Zem Hospital, and all others must be either incumbent potentates of other temples or members of the Zem Zem Temple.

As above noted, whereas the old "trustees" were elected by the membership of Zem Zem Temple, the new "governors" are elected by the Board of Directors of the local hospital corporation, with the prior consent and approval of the Board of Trustees of the Colorado corporation—the Board of Directors of the Pennsylvania corporation now being elected by the above-described elective and non-elective members of the Pennsylvania corporation. Moreover, the new by-laws of the local corporation provide that the rules

---

* We cannot tell from the record what number this would total.

and regulations as may be from time to time *promulgated by the Colorado corporation* shall be strictly observed by the Board of Governors in the operation of the hospital's clinics and other facilities. In addition, an operating agreement was entered into between the Pennsylvania corporation and the Colorado corporation, which stated that it was deemed advisable that the legal title to the assets of the Pennsylvania corporation remain vested in it, *"but the control thereof and the operation of the hospital in Erie . . . be vested in the Colorado corporation* under and pursuant to the terms of this agreement." The pertinent provisions of the agreement include the following: (1) the corporate structure, including membership requirements, be amended and changed in such manner as will meet with the approval of the Colorado corporation; (2) *the primary control of the local hospital shall remain in the Colorado corporation* and it shall be operated under and pursuant to the policies, rules and regulations *of the Colorado corporation;* and (3) the membership of the Pennsylvania corporation shall be *those persons* who are serving on the Board of Directors or Board of Trustees *of the Colorado corporation* and not more than six other persons who are members of Zem Zem Temple.

It was on the basis of these aforesaid corporate changes that the Orphans' Court concluded that the "operation and management of the Zem Zem Hospital" was no longer "under the direction and control of trustees who are elected, appointed or otherwise chosen in a manner substantially the same as [at the date of the testator's first codicil,]" and that the gift to the Zem Zem Hospital was thereby revoked.

The appellant hospital contends that the Orphans' Court erred in revoking the gift. First, it urges that the intent of the codicil was not to preclude affiliation with the national organization, but to revoke the

gift to Zem Zem Hospital only if the local hospital were forced to close or to place its management in hands other than those of the Masonic organization. Second, appellant hospital contends that *in fact* those who manage and operate the hospital are still "elected, appointed or otherwise chosen in a manner substantially as at [March 21, 1958]," pointing out that the majority (21 out of 31) of the governors are from the jurisdictional area of Zem Zem Temple.

With respect to the question of the testator's intention, there is no question that he had strong Masonic feelings and inclinations. In his will, he not only requested a Masonic burial service but also provided that he was to be buried wearing his Masonic ring. Moreover, he made generous provision for the Zem Zem Hospital. However, in ascertaining his intention, " '. . . we reiterate what by now is hornbook law: " 'The testator's intention is the pole star in the construction of every will and that intention must be ascertained from the language and scheme of his [entire] will [together with the surrounding facts and circumstances]; *it is not what the Court thinks he might or would or should have said in the existing circumstances,* or even what the Court thinks he meant to say, but *what is the meaning of his words* [cases cited].' " ' "* *Houston Estate,* 414 Pa. 579, 586, 201 A. 2d 592.

Furthermore, it is not the province of a Court to base its decision on what we believe is the fairness and wisdom of the manner in which a testator disposes of his property. In *Little Estate,* 403 Pa. 534, 170 A. 2d 106, we said (pages 536, 537): "The bequest was clearly a contingent gift to Don Little, contingent, not upon murder or even divorce, but upon his surviving his wife, with a gift over in the event of his failure to do so. . . .

---

\* Italics in original Opinion.

" ' ". . . While it is difficult for many people to understand how or why a man is permitted to make a strange or unusual or an eccentric bequest, especially if he has children or close relatives living, we must remember that under the law of Pennsylvania, ' "a man's prejudices are a part of his liberty. He has a right to the control of his property while living, and may bestow it as he sees fit" at his death: McCown v. Fraser, 327 Pa. 561, 192 A. 674; Cauffman v. Long, 82 Pa. 72.' " Johnson Will, 370 Pa. 125, 87 A. 2d 188.' "

The words used by the testator in his lawyer-prepared will and codicils are clear, so we are left to their application to the existing facts and circumstances. Thus we must simply determine the narrow question whether the operation and management of and admission to Zem Zem Hospital are no longer under "the direction and control of Trustees who are elected, appointed or otherwise chosen in a manner substantially as at the present time, by the general membership of Zem Zem Temple. . . ."

In spite of the fact that a large number of the persons who continue to manage and operate the Zem Zem Hospital are from the area of the Zem Zem Temple, it is clear that the manner in which they are chosen has changed *substantially* from the date of the testator's first codicil. The Board of Governors is now elected by the Board of Directors of the Pennsylvania corporation, but only, as the by-laws point out, with the prior consent and approval of the Board of Trustees of the Colorado corporation. Furthermore, the Board of Directors of the Pennsylvania corporation, which elects the Board of Governors, is elected from the membership of the Pennsylvania corporation, which membership now includes in large part persons serving as directors or trustees of the Colorado corporation. This is in contrast with the original situation of the mem-

bership constituting all of the members of Zem Zem Temple, who at the time of the codicil in question were eligible to elect the trustees to manage the Zem Zem Hospital. Regardless of the fact that the Colorado corporation may in large part look to the Zem Zem Temple for recommendations as to the persons who would be in control of the Zem Zem Hospital, it appears clear that the basic power to choose these persons and the control and operation of the hospital and its rules and regulations are vested in the Colorado corporation.

In view of the above facts, we hold that the findings of the Orphans' Court are amply supported by the evidence and that it did not commit reversible error in drawing its conclusions, namely, that the first codicil is applicable and controlling and the bequest of income and principal to Zem Zem Hospital was revoked and Zem Zem's percentage was given and added to testator's bequest to Hamot Hospital.

We now come to a consideration of appellant's last contention, which raises a very important issue. That issue is whether the testator's *second codicil,* which ratified and affirmed the provisions of his will dated September 16, 1957, constituted a ratification and republishing of the *first codicil* on the well-established ground that the first codicil was a part of the will, or whether, as appellant contends, failure to ratify or republish or mention the first codicil impliedly revoked it.

We start with the general legal principle that a codicil is essentially an addition or supplement to a will and, unless a contrary intention appears, both the codicil and the will must be construed together as one instrument. In *Crooks Estate,* 388 Pa. 125, 130 A. 2d 185, the Court said (page 128-129) : "A codicil is a testamentary writing which is a supplement to a will and which expressly or by necessary implica-

tion changes—i.e., alters, adds to or subtracts from— a prior will (or occasionally merely republishes it), but it does not purport to dispose of the entire estate or to contain the entire will of the testator, nor does it ordinarily expressly or by necessary implication revoke in toto a prior will: cf. Boyer Estate, 372 Pa. 553, 94 A. 2d 721; Hunter, Pennsylvania Orphans' Court Commonplace Book, Vol. 1, p. 128; 2 Blackstone's Commentaries 500; Lee's Estate, 16 Pa. Superior Ct. 627.

"Justice STEARNE expressed the general attributes and the effect of a codicil in Boyer Estate, 372 Pa., supra (pages 556-557):

" 'A codicil and a will must be construed together as one instrument. The codicil disturbs the disposition of the will only when plainly inconsistent with the will: Rainear's Estate, 304 Pa. 539, 156 A. 166; Chauncey's Estate, 335 Pa. 73, 5 A. 2d 795; Moore Estate, 347 Pa. 276, 32 A. 2d 12; Braun Estate, 358 Pa. 271, 56 A. 2d 201. While a later will is essentially a revocation, a codicil is a confirmation except as to express alterations. In the case of a codicil no revocation of the will is presumed. The terms of a codicil indicate an addition: Sigel's Estate (No. 1), 213 Pa. 14, 62 A. 175; Warne's Estate, 302 Pa. 386, 153 A. 688; Wright's Estate, 68 Pa. Superior Ct. 177. As the purpose of a codicil ordinarily is merely to modify or add to and not revoke, a codicil changes the will only to the extent it is inconsistent with it: Estate of Edward S. Whelen, 175 Pa. 23, 34 A. 329; Schattenberg's Estate, 269 Pa. 90, 112 A. 67. If any specific change in the will is made by the codicil, it negatives by implication an intention to make any other changes in the provisions of the will: Line's Estate, 221 Pa. 374, 70 A. 791.' "

Does the general rule prevail, i.e., that a will and codicil are and must be construed together as one in-

strument, when a subsequent codicil specifically ratifies all other provisions of a testator's will specifically dated September 16, 1957, and with no mention of or reference to testator's intermediate codicil dated March 21, 1958; or does the specific reference to a will *by date,* with no reference to the prior codicil, impliedly revoke the codicil? The cases on this *exact* point are few in number and the law is not yet well settled. We believe that it was expressly and wisely decided in *Lee's Estate,* 16 Pa. Superior Ct. 627, (Opinion) by President Judge RICE, who cited two English cases to support him, that a second codicil which expressly republished a will, but omitted mention of an intermediate codicil, was nevertheless a ratification and confirmation of the will and of every codicil that had been added to it. That general principle was stated to be the law in Pennsylvania Orphans' Court Commonplace Book, 2d Ed., by that able Orphans' Court Judge DAVID G. HUNTER (brought up to date by M. Paul Smith and J. Brooke Aker), in his chapter on Republication of Wills, Vol. 5, §1(c), page 202, "Intermediate Codicils," and was followed in *Hartman Estate,* 49 Berks 160.

We believe this interpretation and result is sound and we therefore hold that a second codicil which expressly ratifies or republishes a will but omits any mention of a first or an intermediate codicil is nevertheless a ratification and confirmation and republishing of the will with every codicil which has been added to it, unless a contrary intention clearly appears.

Decree affirmed, costs to be paid out of the principal of the trust.

Mr. Justice O'BRIEN and Mr. Justice ROBERTS took no part in the consideration or decision of this case.