434 A.2d 1192

ESTATE OF Robert TOLAND, Deceased.

**Appeal of Morris LLOYD and Girard Trust Bank, Trustees.**

Supreme Court of Pennsylvania.

Argued Oct. 16, 1980.

Decided Sept. 24, 1981.

Robert Montgomery Scott, C. Suzanne Buechner, Philadelphia, for appellant.

Lawrence Barth, Deputy Atty. Gen., for Commonwealth.

Ross Weiss, Wyncote, for Whitemarsh Township.

Roger B. Reynolds, and R. Stephen Barrett, Norristown, for Montgomery County.

Philip A. Bregy, Cuthbert H. Latta, Philadelphia, for Toland, Jr., Toland, Drinker, and Ruf.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

KAUFFMAN, Justice.

█ This is an appeal from a final decree of the Orphans' Court of Montgomery County construing the will and codicil of Robert Toland ("testator").[1] The principal issue presented is whether testator intended to make a gift of certain of his real estate known as "Aubrey" to the entities named in a codicil or whether he intended simply to create a right of first refusal to purchase the property. In a declaratory judgment proceeding initiated by appellants, trustees of

1. Jurisdiction is vested in this Court by virtue of the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S.A. § 722(3).

484

testator's residuary trust ("trustees"), the Orphans' Court concluded that a gift was intended.[2] We agree, and accordingly, affirm.[3]

■ Testator, who died on December 10, 1954, executed his last will and testament on July 11, 1949. He later amended a portion of the will's residuary clause by codicil dated May 14, 1952. Prior to its amendment the residuary clause provided in pertinent part:

FIFTEENTH : All the rest, residue and remainder of my estate, of whatsoever kind or character, whether real, personal or mixed . . . I give, devise and bequeath unto my Trustees . . . ; IN TRUST, NEVERTHELESS, for the several uses and purposes hereinafter expressed and declared, that is to say:

(a) To hold, keep and maintain my real estate . . . known as "Aubrey", consisting of my house and about

2. Two of the named entities, the Commissioners of Fairmount Park and St. Thomas Church disclaimed any interest in acquiring "Aubrey" either by gift or purchase, and made no appearance in the declaratory judgment proceeding. Thus, appellees herein are Montgomery County and Whitemarsh Township.

3. Approximately six months after the Orphans' Court entered its final decree, testator's children ("petitioners") filed with this Court a Petition To Remand The Record To The Lower Court For Supplementary Proceedings Necessary For A Declaratory Judgment. They maintain therein that a remand is necessary since the Orphans' Court: (1) failed to decide who was entitled to the proceeds of a prior partial condemnation of "Aubrey" by Whitemarsh Township in 1959; and (2) failed to appoint a guardian or trustee ad litem to represent minor and unascertained remainder interests in the trust. We conclude that these contentions have been waived. Petitioners were made parties to the declaratory judgment proceeding and were served with a citation to show cause why a declaratory judgment should not be granted. Instead of responding to the citation and raising the contentions now being raised in their Petition for Remand, petitioners relied on trustees to represent their interests as residuary beneficiaries under the will, and chose not to make an appearance in the declaratory judgment proceeding or to join in this appeal from the final decree. Moreover, petitioners have no standing to petition for remand on the ground that a guardian ad litem was not appointed by the Orphans' Court to represent minor and unascertained remainder interests, since they are requesting this remand entirely on their own behalf and not as natural guardians for or on behalf of any minor or unascertained remainder interests.

thirty-six (36) acres of land appertaining thereto, . . . and to permit my said wife, AUGUSTINE VAN WICKLE TOLAND, to occupy and use the same, or part thereof, with appurtenances, as her home, for and during the term of her natural life, or for as long as she may elect so to do, without any compensation whatsoever to my estate and without the necessity or giving any security therefor. My said residence or farm cottage shall not be sold by my Trustees so long as the same is occupied by my said wife pursuant to the foregoing provisions, without her written consent; but, upon obtaining such consent, or upon the death of my said wife, my Trustees may in their discretion *rent, sell or demolish the same under the power and authority hereinafter granted my Trustees.* (Emphasis supplied).[4]

The May 14, 1952 codicil amended the second sentence of subparagraph (a), as follows:[5]

. . . My said residence or farm cottage shall not be sold by my Trustees so long as the same is occupied by my said wife pursuant to the foregoing provisions, without her written consent; but, upon obtaining such consent, or upon the death of my said wife, my Trustees *shall transfer and convey the aforesaid real estate* to such of the following as may desire to acquire the same for such *public use,* as a park or otherwise, as they may deem most suitable, preference being given in the order named: Commissioners of Fairmount Park; Montgomery County; St. Thomas Church, Whitemarsh; Whitemarsh Township. I further direct my Trustees to suggest, but not to require, that the body acquiring title to said real estate *designate the same as "The Aubrey Memorial Park".* (Emphasis supplied)

Trustees maintain that it was testator's intent in the codicil that "Aubrey" be offered for *sale* to the four named

4. The residuary clause further provided that, upon the death of his wife, testator's "entire residuary estate" was to be divided and held in trust for his living children and the surviving issue of any deceased children. Testator's wife died on May 22, 1977.

5. The codicil ratified and confirmed the will in all other respects.

entities and that they be given merely the right of first refusal to purchase the property in the order named. They claim further that the language of the codicil is ambiguous and thus must be interpreted by resorting to various canons of construction. We disagree.

We have stated repeatedly that:

The primary consideration in the construction and interpretation of wills is that the intent of the testator be followed... Absent ambiguity, that intent is to be determined from "the four corners of his will," ... The duty of the court is not to determine what the testator might or should have said in light of subsequent events but, rather, the actual meaning of the words used... Only if the language employed by the testator is ambiguous should the court resort to canons of construction. (citations omitted)

*Estate of Blough*, 474 Pa. 177, 185, 378 A.2d 276, 280 (1977).

In the codicil, testator clearly and unambiguously provided that his Trustees *"shall transfer and convey* ['Aubrey'] to such of the [four named entities] as may desire to acquire the same ...."  (Emphasis supplied).[6] It is evident that the words "shall transfer and convey" were intended by testator to be words of gift, particularly in light of the conspicuous absence of any language of sale, right of first refusal, consideration for the transfer or alternative to the transfer if the parties were unable to agree upon purchase price.[7] Indeed, the creation of a gift to one of the four named entities appears to be the sole purpose of the codicil. Moreover, in another part of the will, testator clearly demonstrated that he knew how to use language of sale had he

6. In substituting the words "my Trustees *shall* transfer and convey ['Aubrey']" for the original will language "my Trustees *may* in their discretion rent, *sell* or demolish ['Aubrey']," (emphasis supplied), testator eliminated trustee discretion and mandated transfer of the property to one of the four entities.

7. Appellants concede that "if [the words 'transfer and convey'] were used in a will with no other qualification and no other indication of intention, they would normally suggest that a gift was intended." (Appellants' Brief at 16)

intended to do so.[8]  Testator further manifested his intent to make a gift of "Aubrey" by directing that it be used for a public purpose, such as a park, and by expressing his desire that it be named "The Aubrey Memorial Park."

Trustees argue that testator must have intended that the real estate be offered for sale since he provided that it was not to be *sold* without his wife's consent.  The learned opinion of Judge Taxis ably rejected this claim:

> [E]vidence that testator intended no such implication may be found in paragraph Fifteenth (a) of his original will.  There he used the very same language to provide that the real estate was not to be sold during his wife's occupancy of the same without her consent.  Testator then provided that upon obtaining her consent, or upon his wife's death, the trustees may "*rent*", sell "*or demolish*" the same.  Testator therefore did not intend the words "upon obtaining such consent" to carry with them an *implication* of an authority to sell since he *expressly* provided in his original will for authorization not only to sell, but also to rent or demolish.  He even added that such authority is under the power and authority granted the trustees under paragraph Twentieth (a).  Testator was therefore not attempting to place in juxtaposition two opposing alternatives to the exclusion of all other alternatives.  In his *will* he was providing for no sale without his wife's consent, but with her consent, his trustees had the power to rent, sell or demolish.  In his *codicil* he was providing for no sale without his wife's consent, but with his wife's consent, his trustees were directed to transfer and convey.  From the language of his codicil the Court finds no implication that the real estate was to be offered for sale to the four named entities.  (Emphasis in original)

Although the codicil may have been inartfully drafted, we agree with the Orphans' Court that it clearly intended a gift,

---

8.  Paragraph TWENTIETH (a) of the will provided testator's trustees with the discretionary power "[t]o continue to hold and to *sell and convey* ... the whole or any part of [his] estate ....  (Emphasis supplied).  Paragraph Fifteenth (a) of the original will also provided testator's trustees with the discretionary power to "sell" Aubrey.

not a sale. Accordingly, the decree of the Orphans' Court is affirmed.

Each party to pay own costs.

O'BRIEN, C. J., filed a dissenting opinion, in which ROBERTS, J., joins.

ROBERTS, J., filed a dissenting opinion, in which O'BRIEN, C. J., joins.

O'BRIEN, Chief Justice, dissenting.

I agree with Mr. Justice Roberts that the language "transfer and convey" contained in the codicil does not "clearly and unambiguously" establish an intent to make a gift. However, neither am I convinced that the language evinces a clear and unambiguous intent that the property be sold. The language is unclear and ambiguous. The differing opinions of members of this Court indicate that the language is, in fact, subject to several reasonable interpretations.

In a case such as this, we must follow the precedent as established time and again in our decisional law. In *Rainear Estate*, 304 Pa. 529, 156 A. 166 (1931), we stated:

> "If . . . the codicil is subject to two interpretations, one of which follows the main purpose as expressed in the will and the other is not consistent with it, the consistent interpretation will be adopted. . . ."

*Id.*, 304 Pa. at 543, 156 A. at 167. *See also, In re Johnson Estate*, 435 Pa. 303, 255 A.2d 571 (1969); *In re Crooks Estate*, 388 Pa. 125, 130 A.2d 185 (1957); *In re Boyer Estate*, 372 Pa. 553, 94 A.2d 721 (1953); *In re Braun Estate*, 358 Pa. 271, 56 A.2d 201 (1948); *In re Horn Estate*, 351 Pa. 131, 40 A.2d 471 (1945).

Appellant's codicil must be construed in the context of the original will. Since the language is subject to interpretations of both a sale and a gift, adherence to the *known* intent of the testator to benefit his children through the residual estate must be achieved. This is accomplished by viewing the language in question as indicative of an intent to create a sale rather than a gift. The disputed language is thus reconciled to the main purpose of the will. Such a

finding also comports with the mandate of *Bissell's Estate,* 302 Pa. 27, 32, 153 A. 692, 694 (1940) that a "codicil will not disturb the disposition of the will further than is absolutely necessary for the purpose of giving it effect."

The decree of the Orphans' Court should be reversed.

ROBERTS, J., joins in this opinion.

ROBERTS, Justice, dissenting.

I dissent. Contrary to the majority's assertion, testator's direction to his trustees to "transfer and convey" the Aubrey property does not "clearly and unambiguously" establish an intent to make a gift. If anything, the language of the codicil to testator's will can reasonably be read to require a different result—that the Aubrey property be sold.

The codicil provides:

"My said residence or farm cottage shall not be sold by my Trustees so long as the same is occupied by my said wife pursuant to the foregoing provisions, without her written consent; but, upon obtaining such consent, or upon the death of my said wife, my Trustees shall transfer and convey the aforesaid real estate to such of the following as may desire to acquire the same for such public use, as a park or otherwise, as they may deem most suitable, preference being given in the order named: Commissioners of Fairmont Park; Montgomery County; St. Thomas Church, Whitemarsh; Whitemarsh Township. I further direct my Trustees to suggest, but not to require, that the body acquiring title to said real estate designate the same as 'The Aubrey Memorial Park'."

By this codicil, testator authorized his trustees to "transfer and convey" the Aubrey residence on one of two conditions—the written consent of his widow, or the widow's death. By itself the meaning of "transfer and convey" is consistent with both a sale and a gift. However, testator specifically stated that "[m]y said residence or farm cottage shall not be sold by my Trustees so long as the same is occupied by my said wife pursuant to the foregoing provisions, without her written consent . . . ." Testator followed

this language immediately with the direction that, "upon obtaining such consent, . . . my Trustees shall transfer and convey . . . ." Testator's language "such consent," in context, can refer only to the widow's consent to a sale. Surely testator would not have required the trustees to obtain the widow's consent to a sale as a prerequisite to a gift.

If on the contingency of the widow's written consent the trustees must "transfer and convey" the property for consideration, so too on the contingency of the widow's death the property also must be sold. Common sense dictates that the words "transfer and convey" cannot mean one thing in the case of one contingency and a different thing in the case of another. Indeed, it is a well-settled canon that "[a] construction which will satisfy the language used without leading to absurd or inconvenient results is to be preferred . . . ." *Duffy Estate*, 313 Pa. 101, 106, 169 A. 142, 144 (1933).

The testamentary plan of testator was to require his trustees to sell his valuable asset for the benefit of his family. It was not his plan to confer the windfall, which the majority grants, upon complete strangers.

The decree of the orphans' court, therefore, must be reversed.

O'BRIEN, C. J., joins in this dissenting opinion.